## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

JULIAN FERNAU

     Plaintiff,

v.

ENCHANTE BEAUTY PRODUCTS,
INC. AND RAUL LAMUS,

     Defendants.

CASE NO. _____

## VERIFIED COMPLAINT

COMES NOW, Julian Fernau, Plaintiff and files this civil complaint against Enchante Beauty Products, Inc. ("**Enchante**") and Raul Lamus (jointly referred to as "**Defendants**").

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331.  This is a civil action arising under the Constitution, laws, or treaties of the United States.  The Court also has exclusive jurisdiction pursuant to §27 of the Securities Exchange Act of 1934 ("**Exchange Act**"), 15 U.S.C. §78aa, because this civil action involves violations of the rules and regulations thereunder.

2.     This Court further has supplemental jurisdiction under 28 U.S.C. §1367 over all other claims herein because such claims form part of the same case or controversy.

3.     Personal jurisdiction over Defendants is present in the State of Florida in accordance with Fla. Stat. §48.193.  Defendants have (i) operated, conducted, engaged in, or carried on a business or business venture in this state or had an office or agency in this state, (ii) have committed a tortious act within this state, and (iii) have engaged in substantial and not isolated activity within this state. Further, personal jurisdiction is established under §27 of the Exchange Act, 15 U.S.C. §78aa.  Defendants can be found, inhabit, or transact business within the Southern District of Florida.

4.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b).  The Southern District of Florida is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.  Further, Enchante is deemed a resident of this District.

## PARTIES

5.     Enchante is a Florida profit corporation with its principal place of business located at 8600 NW South River Drive, Suite 215, Medley, FL 33166. Enchante was formed on November 9, 2015 in the State of Florida.  On January 6, 2016, Beauty Care Partners Strategic Channels, Inc., a Delaware corporation, was merged into Enchante.

6.     Raul Lamus was the chief executive officer and is a director of Enchante.  Upon information and belief, Lamus is a foreign resident in Spain.

During the time of the relevant facts to this Complaint, Lamus resided in Miami, Florida.

7.      Julian Fernau is a resident of Miami-Dade County, Florida.

## FACTUAL BACKGROUND

8.      This lawsuit is a civil action for violation of the state and federal securities laws in the unregistered and unlawful distribution of securities of Enchante and fraud, by way of material misstatements and omissions, in connection with the sale of those securities.  Plaintiff further raises one count under the Florida Racketeer Influenced and Corrupt Organizations Act ("**RICO**") for Defendants' violations of the Florida Securities and Investor Protection Act.

9.      Between February and March of 2017, Lamus solicited Plaintiff for the investment of sixty-two thousand five hundred dollars ($62,500) into Enchante. Mr. Fernau is not an accredited investor and no known exemption from registration is available under either the Florida or United States securities laws.  The investment was further solicited with material misstatements and omissions. Lamus was aware of the poor financial performance of Enchante and substantial, unpaid liabilities, but failed to disclose those items at the time of the sale of securities to Plaintiff.

## COUNT I
## RESCISSION UNDER THE FLORIDA SECURITIES AND
## INVESTOR PROTECTION ACT
## (FLA STAT. §517.211)

10.     The allegations contained in paragraphs 1 through 9 are hereby

incorporated by reference as if such were restated in full.

11.     Pursuant to Fla. Stat. §517.211(1), a sale made in violation of Fla.

Stat. §517.07 (registration of securities) may be rescinded at the election of the

purchaser.  The securities sold to Plaintiff are not exempt securities, were not sold

in a transaction exempt from the Florida registration requirements, are not

federally covered securities, and were not otherwise registered with the Florida

Financial Services Commission.

12.     In accordance with Fla. Stat. §517.211(1), each person making the

sale and every director, officer, partner, or agent of or for the seller, if the director,

officer, partner, or agent has personally participated or aided in making the sale, is

jointly and severally liable to the purchaser in an action for rescission.  Lamus has

personally participated or aided in the sale of securities to Plaintiff.

13.     Fla. Stat. §517.301 provides that it is unlawful and a violation of

Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or

purchase of any investment or security (i) to employ any device, scheme, or artifice

to defraud, (ii) to obtain money or property by means of any untrue statement of a

material fact or any omission to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

14.    Pursuant to Fla. Stat. §517.211(2), any person purchasing or selling a security in violation of Fla. Stat. §517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission.

15.    Lamus and Enchante, by and through Lamus as chief executive officer and a director, violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Plaintiff.

16.    In soliciting the investment to Plaintiff, Lamus made the following untrue statements of material fact and omissions:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being

incurred.  This was not true and Enchante was substantially insolvent when the sale of securities occurred.

B.  Lamus failed to disclose substantial liabilities Enchante had when he solicited and sold the investment to Plaintiff.  These unpaid and substantial liabilities included unpaid taxes in Colombia and unpaid accounts payable and royalties to Enchante's primary supplier, La Biothetique.

C.  Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to retail stores.  This arrangement resulted in inflated sales because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to sale to the end-user or customer.

D.  Lamus represented that Enchante, at the time of sale, had a valuation of $1,250,000.  This valuation was grossly inflated and did not rely upon any recognized valuation methodology.

E.  Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

F.  Lamus failed to disclose the lack of profitability of Enchante in prior years.  Neither Enchante nor its affiliates had ever reached a point of profitability.

G. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Lamus knew at the time of the sale of securities to Plaintiff that the company's sales representatives had engaged in questionable sales practices to increase their own commissions.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

17.     Had Lamus made full and accurate disclosure at the time of the sale of the securities to Plaintiff, Mr. Fernau would not have invested into the company.  Mr. Fernau's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

18.     The untrue statements and omissions of material fact were the proximate cause of Plaintiff's loss.  Due to the poor financial state of the company, Enchante had failed less than one year after Plaintiff's investment.

19.     On January 26, 2018, Mr. Fernau, through his attorney, sent a notice of rescission to Defendants, requesting the return of the sixty-two thousand five hundred dollars ($62,500) invested.

20.     Defendants have failed to tender Mr. Fernau's funds.

21.     Pursuant to Fla. Stat §517.211(6), Plaintiff requests an award of reasonable attorneys' fees.

## COUNT II
## RESCISSION UNDER §29(b) OF THE SECURITIES
## EXCHANGE ACT OF 1934
## (15 U.S.C. §78CC)

22.     The allegations contained in paragraphs 1 through 9 are hereby

incorporated by reference as if such were restated in full.

23.     Pursuant to §29(b) of the Exchange Act, every contract made in

violation of, or the performance of a contract which involves the violation of, any

provision of 15 USCS §§78a, et seq. is void with regards the rights of any person

who, in violation of any such provision, rule, or regulation, shall have made or

engaged in the performance of any such contract.

24.     Defendants have violated §5 of the Securities Act of 1933

("**Securities Act**") because they have engaged in an unregistered and unlawful

distribution of securities.

25.     §5 of the Securities Act, 15 U.S.C. §77e, provides that unless a

registration statement is in effect as to a security, it shall be unlawful for any

person, directly or indirectly, to make use of any means or instruments of

transportation or communication in interstate commerce or of the mails to sell such

security or carry or cause to be carried through the mails or in interstate commerce,

by any means or instruments of transportation, any such security for the purpose of

sale or for delivery after sale.

26.     Enchante had not filed a state or federal registration for the sale of the securities to Plaintiff and no known exemption from the state or federal registration requirements is available.

27.     The investment contract with Plaintiff was also entered into and made in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j, and promulgated rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

28.     §10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

29.     Defendants have violated §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder and have used the means and instrumentality of interstate commerce, including the mails, in the consummation of their fraud. The following are some of the wire communications made by Mr. Lamus in connection sale of securities to Plaintiff:

　　　A. Email communication on February 28, 2017, from Lamus to Mr. Fernau, containing a pro forma income statement for 2017.

B. Email communication on March 1, 2017, from Lamus to Mr. Fernau, identifying a $1,250,000 valuation at the time of purchase of the securities.

C. Email communication on March 3, 2017, distributing an Investment Memo Executive Summary. The memorandum provided that the investment would have "minimum risk," that thirty salons had been contracted in Colombia within six months, a $2,300,000 valuation, expected return of 500% within five years, and estimated revenues of $10,000,000 and $30,000,000 in years three and five.

D. Email communication on March 6, 2017, from Lamus to Mr. Fernau, providing a target return of 2x-4x within three years and further stating that Mr. Fernau would receive "a very attractive return that compensates well for other opportunity costs for you, and allow you to have an important share of the Company with a relatively small investment."

30.    In soliciting the investment to Plaintiff, Lamus made the following untrue statements of material fact and omissions:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred. This was not true and Enchante was substantially insolvent when the sale of securities occurred.

B. Lamus failed to disclose substantial liabilities Enchante had when he solicited and sold the investment to Plaintiff.  These unpaid and substantial liabilities included unpaid taxes in Colombia and unpaid accounts payable and royalties to Enchante's primary supplier, La Biothetique.

C. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to retail stores.  This arrangement resulted in inflated sales because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to sale to the end-user or customer.

D. Lamus represented that Enchante, at the time of sale, had a valuation of $1,250,000.  This valuation was grossly inflated and did not rely upon any recognized valuation methodology.

E.  Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

F.  Lamus failed to disclose the lack of profitability of Enchante in prior years.  Neither Enchante nor its affiliates had ever reached a point of profitability.

G. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Lamus knew at the time of the sale of the securities

to Plaintiff, that the company's sales representatives had engaged in questionable sales practices to increase their own commissions. These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

31.    Lamus' untrue statements of material fact and omissions to disclose material facts in connection with the sale of securities to Plaintiff constitute devices, schemes, and artifices to defraud and constitute acts, practices, or courses of conduct which operated as fraud or deceit within the meaning of §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder.

32.    Had Lamus made full and accurate disclosure at the time of the sale of the securities to Plaintiff, Mr. Fernau would not have invested into the company. Mr. Fernau's reliance was also reasonable. Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

33.    The untrue statements and omissions of material fact were the proximate cause of Plaintiff's loss. Due to the poor financial state of the company, Enchante had failed less than one year after Plaintiff's investment.

34.    Defendants acted with scienter in the consummation of their fraudulent scheme. The omissions and misrepresentations were not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care and misled Plaintiff. Lamus was personally aware of the poor

financial condition of Enchante as he was the chief executive officer and director and was primarily responsible for the creation and maintenance of the books and records of the company.  Further, Plaintiff's funds were immediately used to pay such expenses as Lamus' own personal compensation and travel expenses.

35.     On January 26, 2018, Mr. Fernau, through his attorney, sent a notice of rescission to Defendants, requesting the return of the sixty-two thousand five hundred dollars ($62,500) invested.

36.     Defendants have failed to tender Mr. Fernau's funds.

## COUNT IIII
## FRAUD IN CONNECTION WITH THE SALE OF A SECURITY
### (Fla. Stat. §517.301)

37.     The allegations contained in paragraphs 1 through 9 are hereby incorporated by reference as if such were restated in full.

38.     Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

39.     Lamus and Enchante, by and through Lamus as chief executive officer and a director, have violated §517.301 because they have, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Plaintiff.

40.     In soliciting the investment to Plaintiff, Lamus made the following untrue statements of material fact and omissions:

A.  Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.  This was not true and Enchante was substantially insolvent when the sale of securities occurred.

B.  Lamus failed to disclose substantial liabilities Enchante had when he solicited and sold the investment to Plaintiff.  These unpaid and substantial liabilities included unpaid taxes in Colombia and unpaid accounts payable and royalties to Enchante's primary supplier, La Biothetique.

C.  Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to retail stores.  This arrangement resulted in inflated sales because sales were

recognized when product was shipped, but retail stores had no obligation to pay for the products prior to sale to the end-user or customer.

D. Lamus represented that Enchante, at the time of sale, had a valuation of $1,250,000. This valuation was grossly inflated and did not rely upon any recognized valuation methodology.

E. Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

F. Lamus failed to disclose the lack of profitability of Enchante in prior years. Neither Enchante nor its affiliates had ever reached a point of profitability.

G. Lamus failed to disclose problems in Enchante's sales and distribution structure. In particular, Lamus knew at the time of the sale of the securities to Plaintiff, that the company's sales representatives had engaged in questionable sales practices to increase their own commissions. These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

41.    Had Lamus made full and accurate disclosure at the time of the sale of the securities to Plaintiff, Mr. Fernau would not have invested into the company. Mr. Fernau's reliance was also reasonable. Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

42.    The untrue statements and omissions of material fact were the proximate cause of Plaintiff's loss.  Due to the poor financial state of the company, Enchante had failed less than one year after Plaintiff's investment.

**COUNT IV**
**FRAUD IN CONNECTION WITH THE SALE OF A SECURITY**
**(§10(b) of the Exchange Act, 15 U.S.C. §78j, and Rule 10b-5, 17 C.F.R.**
**§240.10b-5)**

43.    The allegations contained in paragraphs 1 through 9 are hereby incorporated by reference as if such were restated in full.

44.    The investment contract with Plaintiff was entered into and made in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j, and promulgated Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

45.    §10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

46.    Defendants have violated §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder and have used the means and instrumentality of interstate commerce, including the mails, in the consummation of their fraud.

The following are some of the wire communications made by Mr. Lamus in connection sale of securities to Plaintiff:

A. Email communication on February 28, 2017, from Lamus to Mr. Fernau, containing a pro forma income statement for 2017.

B. Email communication on March 1, 2017, from Lamus to Mr. Fernau, identifying a $1,250,000 valuation at the time of purchase of the securities.

C. Email communication on March 3, 2017, distributing an Investment Memo Executive Summary. The memorandum provided that the investment would have "minimum risk," that thirty salons had been contracted in Colombia within six months, a $2,300,000 valuation, expected return of 500% within five years, and estimated revenues of $10,000,000 and $30,000,000 in years three and five.

D. Email communication on March 6, 2017, from Lamus to Mr. Fernau, providing a target return of 2x-4x within three years and further stating that Mr. Fernau would receive "a very attractive return that compensates well for other opportunity costs for you, and allow you to have an important share of the Company with a relatively small investment."

47. In soliciting the investment to Plaintiff, Lamus made the following untrue statements of material fact and omissions:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.  This was not true and Enchante was substantially insolvent when the sale of securities occurred.

B. Lamus failed to disclose substantial liabilities Enchante had when he solicited and sold the investment to Plaintiff.  These unpaid and substantial liabilities included unpaid taxes in Colombia and unpaid accounts payable and royalties to Enchante's primary supplier, La Biothetique.

C. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to retail stores.  This arrangement resulted in inflated sales because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to sale to the end-user or customer.

D. Lamus represented that Enchante, at the time of sale, had a valuation of $1,250,000.  This valuation was grossly inflated and did not rely upon any recognized valuation methodology.

E. Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

F.  Lamus failed to disclose the lack of profitability of Enchante in prior years.  Neither Enchante nor its affiliates had ever reached a point of profitability.

G. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Lamus knew at the time of the sale of the securities to Plaintiff, that the company's sales representatives had engaged in questionable sales practices to increase their own commissions.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

48.    Lamus' untrue statements of material fact and omissions to disclose material facts in connection with the sale of securities to Plaintiff constitute devices, schemes, and artifices to defraud and constitute acts, practices, or courses of conduct which operated as fraud or deceit within the meaning of §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder.

49.    Had Lamus made full and accurate disclosure at the time of the sale of the securities to Plaintiff, Mr. Fernau would not have invested into the company. Mr. Fernau's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

50.     The untrue statements and omissions of material fact were the proximate cause of Plaintiff's loss.  Due to the poor financial state of the company, Enchante had failed less than one year after Plaintiff's investment.

51.     Defendants acted with scienter in the consummation of their fraudulent scheme.  The omissions and misrepresentations were not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care and misled Plaintiff.  Lamus was personally aware of the poor financial condition of Enchante as he was the chief executive officer and director and was primarily responsible for the creation and maintenance of the books and records of the company.  Further, Plaintiff's funds were immediately used to pay such expenses as Lamus' own personal compensation and travel expenses.

### COUNT V
### VIOLATION OF THE FLORIDA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### (Fla. Stat. §895.03)

52.     The allegations contained in paragraphs 1 through 9 are hereby incorporated by reference as if such were restated in full.

53.     Fla. Stat. §895.03 provides that is unlawful for any person (i) who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest any part of such proceeds in the establishment or operation of any enterprise, (ii) through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of

any enterprise, or (iii) to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity.

54.     Defendants Lamus and Enchante together formed an "enterprise" within the meaning of Fla. Stat. §895.02(5) because Lamus is an individual and Enchante a corporation which together associated in fact and created the resulting criminal enterprise.

55.     Defendants actions constitute a "pattern of racketeering activity." Such predicate acts and crimes supporting this Florida RICO action include those specified under Fla. Stat. §895.02(8)(a)(11) (two or more violations of the Florida Securities and Investor Protection Act, Fla. Stat. §517.301, *et. seq*.,).

56.     First, Defendants violated Fla. Stat. §517.07 (registration of securities) because the securities sold to Plaintiff are not exempt securities, were not sold in a transaction exempt from the Florida registration requirements, are not federally covered securities, and were not otherwise registered with the Florida Financial Services Commission.

57.     Second, Lamus and Enchante, by and through Lamus as chief executive officer and a director, have violated Fla. Stat. §517.301 because they have, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a

transaction, practice, or course of business which operated as a fraud or deceit upon Plaintiff.

58.    In soliciting the investment to Plaintiff, Lamus made the following untrue statements of material fact and omissions:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.  This was not true and Enchante was substantially insolvent when the sale of securities occurred.

B. Lamus failed to disclose substantial liabilities Enchante had when he solicited and sold the investment to Plaintiff.  These unpaid and substantial liabilities included unpaid taxes in Colombia and unpaid accounts payable and royalties to Enchante's primary supplier, La Biothetique.

C. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to retail stores.  This arrangement resulted in inflated sales because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to sale to the end-user or customer.

D. Lamus represented that Enchante, at the time of sale, had a valuation of 1,250,000.  This valuation was grossly inflated and did not rely upon any recognized valuation methodology.

E.  Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

F.  Lamus failed to disclose the lack of profitability of Enchante in prior years.  Neither Enchante nor its affiliates had ever reached a point of profitability.

G. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Lamus knew at the time of the sale of the securities to Plaintiff, that the company's sales representatives had engaged in questionable sales practices to increase their own commissions.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

59.    Had Lamus made full and accurate disclosure at the time of the sale of the securities to Plaintiff, Mr. Fernau would not have invested into the company.  Mr. Fernau's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

60.     The untrue statements and omissions of material fact were the proximate cause of Plaintiff's loss. Due to the poor financial state of the company, Enchante had failed less than one year after Plaintiff's investment.

61.     Defendants committed the predicate acts willfully or with actual knowledge of their illegality as their purpose was to execute a scheme or artifice to defraud Plaintiff of his investment.

WHEREFORE, Plaintiff prays for a judgment in his favor and against Defendants, jointly and severally, in the amount of sixty-two thousand five hundred dollars ($62,500), trebled to one hundred eighty-seven thousand five hundred dollars ($187,500), plus prejudgment interest from the date of sale, and an award of attorneys' fees.

This 7th day of March, 2018.

/s/ Michael Stegawski
Michael Stegawski
Fla Bar No. 51589

Convergent Litigation Associates
1111 Brickell Ave, Suite 1100
Miami, FL 33131
T: (800) 750-9861 x101
F: (800) 531-3243
michael@cla-law.com

*Attorney for Plaintiff*

## <u>VERIFICATION</u>

I, Julian Fernau, Plaintiff in the above-styled action, hereby declare, under penalty of perjury, that I have read the foregoing Verified Complaint and that the facts stated therein are true and correct.

_____<br>
Julian Fernau