UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-20866-SCOLA/MCALILEY

JULIAN FERNAU, FERNANDO MATEU, and
MARIA DOLORES DE LUCAS,

    Plaintiffs,

v.

ENCHANTE BEAUTY PRODUCTS, INC.,
RAUL LAMUS, AND MARIA FERNANDA REY,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

Pending before the Court is Defendants' Consolidated Motion to Dismiss (ECF No. 115). The motion has been fully-briefed, (ECF Nos. 122, 125), and the Honorable Robert N. Scola, Jr. has referred it to me for a report and recommendation, (ECF No. 66).

After careful review of the parties' legal memoranda and the applicable law, for the reasons that follow I recommend that the Court grant Defendants' Motion.

## I.    BACKGROUND

Plaintiffs initiated this lawsuit on March 7, 2018. (ECF No. 1). Prior to the filing of the operative Verified Second Amended Complaint ("SAC"), (ECF No. 106), Defendants filed two motions to dismiss earlier complaints. (ECF No. 17, 57). In both of those motions, the Defendants argued that Plaintiff had failed to sufficiently allege continuity in their Florida RICO claim. (ECF No. 17 at 6-7; ECF No. 57 at 4-8).[1] Defendant

---

[1] Notably, the original complaint was brought on behalf of Mr. Fernau, alone, and the allegations

Rey was not served until June 7, 2019. (ECF No. 98). As a result, the arguments asserted in the pending Motion regarding the sufficiency of the allegations against Rey are raised for the first time.

The SAC was filed on June 21, 2019 and asserts claims for violation of state and federal securities statutes, common law fraud, and Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. 772.101 et seq. (the "Florida RICO Act"). (ECF No. 106) Defendants seek dismissal of the Florida RICO claim and all claims against Maria Fernanda Rey. (ECF No. 115). The facts set forth herein are taken from the allegations of the SAC, which the Court assumes are true at this stage of the proceedings. *See Quality Foods de Centro America S.A. v. Latin American Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 944-95 (11th Cir. 1983) (when considering whether to grant a motion to dismiss a complaint, the court must assume the facts alleged are true and cast them in the light most favorable to the non-moving party).

In August 2015, Defendants Lamus and Rey[2] sold Enchante[3] securities to Plaintiff

---

and Defendants' arguments regarding the pleading of continuity were somewhat different. The Mateu Plaintiffs were added in the First Amended Complaint and Defendants' argument for dismissal of the Florida RICO claim on the basis of Plaintiff's inability to sufficiently allege continuity in ECF No. 57 is substantially similar to that made in the Motion before the Court.

[2] At all relevant times, Lamus and Rey were married, and Lamus was the chief executive officer and a director of Enchante. (*Id*. at ¶¶ 6, 7).

[3] The Mateu Plaintiffs purchased securities in Beauty Care Partners Strategic Channels, Inc., a predecessor corporation that merged into Enchante. (ECF No. 106 at ¶ 5; ECF No. 20-1; ECF No. 20-2). The parties have not suggested that the distinction between the two companies is material to the lawsuit. Therefore, to avoid confusion, the Court will refer to both companies as Enchante.

Mateu and his wife Plaintiff Maria Dolores de Lucas[4] (together, the "Mateu Plaintiffs") for $100,000.00. (ECF No. 106 at ¶ 11; ECF No. 20-1). The sale was solicited using material misstatements and omissions. (ECF No. 106 at ¶ 11). The first misrepresentations and omissions occurred on or about August 5, 2015, when Rey "presented the success of Enchante and its cosmetics business to [the Mateu Plaintiffs]." (*Id*. at ¶ 12). Lamus then organized two in-person meetings with the Mateu Plaintiffs at which the investment was further discussed. (*Id*.). Lamus and Rey provided information regarding the company's financial status, valuation, cash flows, and business plans that was false and misleading and omitted to disclose all material information. (*Id*. at ¶¶ 14, 15). Lamus and Rey also relied upon documents, including an Investment Memo, Executive Summary (the "Investment Memo") which contained materially false and misleading disclosures and/or contained forecasts and assumptions which lacked any reasonable basis in fact. (*Id*. at ¶¶ 16, 18).

In December 2015, Lamus and Rey sold the Mateu Plaintiffs additional securities in Enchante for $6,000.00. (*Id*. at ¶ 21; ECF No. 20-2). This sale was again accomplished with material misstatements and omissions, specifically the omission of the substantial losses Enchante had incurred up to that time and Lamus and Rey's failure to correct the misrepresentations and omissions made in connection with the August 2015 sale of

---

[4] Dolores de Lucas is specifically mentioned in a single allegation of the SAC; Plaintiffs Mateu and Dolores de Luca are otherwise referred to collectively as "Mateu." (ECF No. 106 at ¶ 9). Mateu and Dolores de Lucas were both signatories to the August 2015 and December 2015 stock purchase agreements. (ECF No. 20-1 at 8; ECF No. 20-2).

securities. (ECF No. 106 at ¶¶ 22, 23).

In March 2017, Lamus sold Fernau securities in Enchante for $62,500.00. (*Id*. at ¶ 24; ECF No. 20-3). Rey was not involved in the sale of securities to Fernau. Lamus provided Fernau with communications and documents which contained materially false and misleading disclosures and/or contained forecasts and assumptions which lacked any reasonable basis in fact. (ECF No. 106 at ¶¶ 28, 30). A copy of the Investment Memo which was the same or similar to the copy of that document that had been shared with the Mateu Plaintiffs, was shared with Fernau in the course of the sales solicitation. (*Id*. at ¶¶ 30, 244).

At the time of each sale, Lamus and/or Rey were aware of the poor financial performance of Enchante, or were severely reckless in not knowing this information, and failed to disclose the risks and negative events that had already materialized. (*Id*. at ¶¶ 20, 22, 32-33). This scheme to defraud investors and a criminal enterprise, composed of Enchante, Lamus, and Rey, was ongoing between approximately 2012 and 2017. (*Id*. at ¶ 34).

**II. ANALYSIS**
    A.    <u>Standard of Review</u>

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level."

4

*Id.* And, they must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's factual allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Fraud claims filed in federal court are additionally subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Eleventh Circuit has stated that Rule 9(b)'s fraud particularity requirement is met if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation marks and citation omitted).

  B. <u>RICO Claim</u>

In Count 6, Plaintiffs sue all three Defendants under the Civil Remedies for Criminal

5

Practices Act. Fla. Stat. § 772.101. *et. seq.* "The Florida RICO Act, patterned after the federal RICO Act, establishes civil liability when an enterprise engages in a pattern of criminal activity." *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 679–80 (11th Cir. 2014) (citing Fla. Stat. § 772.103)). Courts that analyze Florida RICO claims rely on cases that analyze federal RICO. *Ferrell v. Durbin*, 311 F. App'x 253, 256 n.5 (11th Cir. 2009) (citing *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1263–64 (11th Cir. 2004)).[5] To state a claim, a civil plaintiff must plead that a defendant "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (citation omitted). "A civil plaintiff must also show (1) the requisite injury to business or property, and (2) that such injury was by reason of' the substantive RICO violation." *Id.* (citation and quotation marks omitted). [6]

Defendants contend the SAC to does not plead a Florida RICO claim because it does not allege (1) the existence of a RICO enterprise that is distinct from the RICO defendants;

---

[5] There are some differences between the two statutes that are inconsequential here. For example, under the federal statute, a plaintiff must allege two or more related acts occurring within a ten-year time span, while the Florida RICO requires that the incidents occur within five years of one another. *Compare* 18 U.S.C. § 1961 (5) *with* Fla. Stat. § 772.102 (4). As another example, unlike cases brought under the federal act, crimes committed at the same time do not qualify as separate incidents for purposes of proving racketeering conduct under the Florida act. Fla. Stat. § 772.102 (4)("For the purposes of this chapter, the term 'pattern of criminal activity' shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons."); *see also State v. Marks,* 758 So. 2d 1131, 1138 (Fla. 4th DCA 2000).

[6] There is some variation in how courts express those elements, but those differences are immaterial to the issues here. *See e.g. Lugo v. Fla.*, 845 So. 2d 74, 97 (Fla. 2003); *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1381 (S.D. Fla. 2014).

6

and (2) a pattern of racketeering activity. (ECF No. 115 at 5-13).

### 1. Plaintiffs Have Failed to Allege a RICO Enterprise Distinct from the RICO Defendants

"Persons" are liable under RICO ("It is unlawful for any person. . ."). Fla. Stat. § 772.103. To plead liability under the Act, a plaintiff must allege the existence of two distinct entities: (1) a "person"; and (2) an enterprise (that engaged in the pattern of criminal activity), that is not the same "person" referred to by a different name. *Cedric Kushner Productions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The Supreme Court has explained that "liability 'depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" *Id.* quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). *See also Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So.2d 565, 574 (Fla. 3d DCA 2004) ("The words 'employed by or associated with,' as used in this provision anticipates an enterprise separate and distinct from the person charged with a civil RICO violation. . . ."). Defendants argue that Plaintiffs have failed to allege the existence of a RICO enterprise that is distinct from the RICO defendants. (ECF No. 115 at 5-7). They are correct.

Here, the "persons" are defendants Lamus, Rey and Enchante. Plaintiffs then allege that those same persons are, collectively, the criminal enterprise:

> 211. Defendants Lamus, Rey, and Enchante formed an "enterprise" within the meaning of Fla. Stat. 772.102(3) because Lamus and Rey are individuals and Enchante a corporation; which together associated in fact and created the resulting criminal enterprise.

(ECF No. 106 at ¶ 211). In the following three paragraphs, Plaintiffs allege that each person

"formed a part of the criminal enterprise."

> 212. Defendant Lamus formed a part of the criminal enterprise because he committed crimes chargeable by indictment under Chapter 517 of the Florida Statutes. Lamus directly benefitted from the proceeds of the criminal activity because investor funds, including those of Plaintiffs, were funneled through Enchante to pay for such items as Lamus' personal salary, lavish travel, and meals and entertainment. Lamus's involvement in the criminal conspiracy exceeded his role as the only agent of Enchante and therefore Lamus, in his individual capacity, became associated in fact with the enterprise.
>
> 213. Defendant Rey formed part of the criminal enterprise because she committed crimes chargeable by indictment under Chapter 517 of the Florida Statutes. Upon information and belief, Rey directly benefitted from the proceeds of the criminal activity because investor funds, including those of Plaintiffs, were funneled through Enchante and then Lamus for her personal benefit. Rey's involvement in the criminal conspiracy exceeded her role as agent of Enchante and therefore Rey, in her individual capacity, became associated in fact with the enterprise.
>
> 214. Defendant Enchante formed part of the criminal enterprise because it committed crimes chargeable by indictment under Chapter 517 of the Florida Statutes. Enchante was the issuer of securities and therefore directly benefitted by the fraudulent sale of its securities because the proceeds of those sales, including those of Plaintiffs' investments, were directed toward the entity. Enchante's involvement in the criminal conspiracy exceeded its role only as the issuer of fraudulent securities, but it became associate in fact with the Individual Defendants. The scheme could not have been accomplished only by Enchante and it relied upon the individual participation of Lamus and Rey.

(ECF No. 106 at ¶¶ 212-214). Last, Plaintiffs allege that collectively, Lamus, Rey and Enchante, acting together, create a distinct entity, which is something other than those three persons working together to engage in criminal conduct:

> 215. Lamus, Rey, and Enchante conducted or participated in the conduct of the enterprise's affairs, separate and apart from their own affairs. The enterprise created was therefore separate and distinct from Lamus, Rey, and Enchante. In other words, the enterprise became the vehicle in which Lamus, Rey, and Enchante joined together to engage in their business of

8

defrauding investors in violation of Florida law."

(*Id*. at ¶ 215). In sum, the SAC alleges that Lamus, Rey and Enchante are all "persons" liable under the Act, and that, collectively, all three are the "enterprise."

"Enterprise" is defined to include an "association, or group of individuals associated in fact although not a legal entity." Fla. Stat. 772.102(b)(3). This definition does not preclude Lamus, Rey and Enchante joining together to form an enterprise. Plaintiffs, however, are precluded from going forward with a RICO cause of action where they claim the very same "persons" are the "enterprise." *Cedric*, 533 U.S. at 161. The assertion in the SAC, that Lamus's and Rey's "involvement in the criminal conspiracy exceeded [his or her] role as [] agent of Enchante" does not alter this fact. *Id.* at ¶¶ 212-13. Nor does the conclusory assertion that the "enterprise created was therefore separate and distinct from Lamus, Rey, and Enchante." *Id.* at ¶ 215. Plaintiffs have alleged that the three "persons" worked together to engage in a pattern of racketeering activity, which under RICO, only an enterprise—that is not the persons—can do.

In their Response, Plaintiffs rely upon the legal principle - that corporations are legal entities distinct from their employees and shareholders - to support the sufficiency of their pleading. (ECF No. 122 at 10-13). It is also true that corporations act through their employees, officers and agents. The Supreme Court recognized both concepts in *Cedric*, when it held that a corporation can be a RICO "enterprise", and its officer can be a RICO "person", who acted within the scope of his authority on behalf of the corporation (enterprise) when it engaged in racketeering activity. Nonetheless, the "person" (there, Don King) and the "enterprise" (there Cedric) were "distinct entities." 533 U.S. at 161-164.

9

Had Plaintiffs alleged that Lamus and Rey are "persons" liable under the Act, and that they "unlawfully conduct[ed] the affairs", *Cedric*, 533 U.S. at 166, of Enchante, the enterprise, in a manner that violated RICO, they would have met the requirement that the persons and entity are separate and distinct. But, of course, that is not their claim.

Another division of this Court, in *Viridis Corp. v. TCA Global Credit Master Fund, LP*, 155 F. Supp. 3d 1344 (S.D. Fla. 2015), addressed a similarly plead complaint. There, a corporation (TCA) was named as the enterprise, and its CEO (Press) and managing director (Silverman) were named as persons *and* as members of the TCA enterprise. *Id.* at 1359. The Court observed: "Generally speaking, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* at 1359-60 (quoting *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.* 336 F. Supp.2d 1239, 1261 (S.D. Fla. 2004). "In other words, the mere fact that employees within a corporation conspire together to commit criminal acts within the scope of their employment does not, in and of itself, create a valid enterprise for purposes of RICO liability." *Id.* The *Viridis* Court continued:

> Under *Cedric*, it would be permissible for Plaintiffs allege Press and Silverman as the 'liable persons,' with TCA alleged to be the 'enterprise,' but as the Amended Complaint reads, that is not what Plaintiffs have alleged. Once Plaintiffs commingle the roles of Press and Silverman as both 'persons' and as 'members of the enterprise' in their allegations, the Court finds that Plaintiffs fail to meet the separate and distinctiveness requirement that must be established to impose RICO liability upon Press and Silverman in their individual capacities.

*Id.* at 1360. As pled, Plaintiffs have not alleged the existence of a RICO enterprise that is

10

distinct from the RICO defendants.

Defendants raised this challenge to the RICO claim for the first time in the current Motion to Dismiss. Presumably, Plaintiffs can cure this pleading error in an amended complaint. In Section II (B)(2) I address another way in which I believe Plaintiffs have failed to plead a necessary RICO element (*i.e.*, "continuity"). If the Court agrees with my recommendation that this requires the Court to dismiss the RICO claim with prejudice, then there is nothing to be gained by allowing Plaintiffs leave to cure the pleading deficiency addressed in this section. If, however, the Court does not adopt that analysis and conclusion, I would then recommend that it dismiss the SAC without prejudice, to allow Plaintiffs the opportunity to allege "persons" who are distinct from the "enterprise."

2. <u>Plaintiffs Failed to Allege a Pattern of Racketeering Activity</u>

A "pattern of racketeering activity must include at least two racketeering acts." *Ray*, 836 F.3d at 1348. Plaintiffs have alleged the requisite criminal acts. Defendants argue, nonetheless, that Plaintiffs failed to plead a pattern of racketeering activity, which requires a plaintiff to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989) (emphasis in original). This pattern requirement has been referred to as "continuity plus relationship." *Id.* Defendants argue that, as pled, the allegations as to the pattern of racketeering activity do not satisfy either of the continuity or relationship requirements. (ECF No. 115 at 7-13).

11

a. Relationship

The notion of related acts is reflected in Florida's RICO definition of "pattern of criminal activity", which means "engaging in two or more incidents of criminal activity that have *the same or similar intents, results, accomplices, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics which are not isolated incidents. . . .*" Fla. Stat. § 772.102 (b)(4) (emphasis added).

The Plaintiffs allege three acts of securities fraud as the racketeering predicates: the August 2015 fraudulent $100,000.00 sale of securities to the Mateu Plaintiffs, the December 2015 fraudulent $6,000.00 sale of securities to the Mateu Plaintiffs, and the March 2017 fraudulent $62,500.00 sale of securities to Fernau. While Rey is alleged to have participated only in the two securities sales to the Mateu Plaintiffs, the transactions are otherwise related in that they involve the sale of shares in Enchante, or its predecessor corporation, on the basis of allegedly fraudulent information. The misrepresentations and omissions made to Plaintiffs were similar and at least one document was allegedly shared with both the Mateu Plaintiffs and Fernau in connection with the sales. I conclude that the predicate criminal acts satisfy the relationship requirement.

b. Continuity

Whether the SAC sets forth the continuity element of a pattern of racketeering activity, is a closer question. The Supreme Court wrote this about RICO's continuity requirement:

> "Continuity" is both a closed – and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO

> violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc.,* 492 U.S. at 241–42. Plaintiffs argue that they have alleged continuity under either the closed or open-ended concepts. (ECF No. 122 at 7). I cannot agree.

Plainly, Plaintiffs have not alleged an open-ended continuity. They could plead an "open-ended" pattern of racketeering activity if they could allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.,* 492 U.S at 242. Plaintiff's alleged predicate crimes all concerned solicitation of investments in Enchante, which Plaintiffs state has ceased to do business. (ECF No. 106 at ¶¶ 235, 249). Plaintiffs are therefore unable to plead a threat of continued activity, and are unable to plead open-ended continuity. *See, e.g., Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 977 (11th Cir. 2015) (no threat of continued criminal activity where there was no longer a working relationship between the parties giving rise to the opportunity for predicate acts to persist in the future).

Whether Plaintiffs have alleged a series of related predicates extending over a substantial period of time, to satisfy a closed-ended continuity, is a more difficult question, given the absence of a bright line test. In this Circuit, as a general rule, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1227 (S.D. Fla. 2011) (citing *Jackson,* 372 F.3d at 1266). The SAC alleges a 19-month scheme, so it clears that hurdle. But that does not end

13

the analysis. In evaluating whether the predicate acts extended over a 'substantial period of time,' "the Court may also consider the number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity." *Id.* at 1229 (citation and quotation marks omitted).

Plaintiffs have alleged three highly similar predicate acts over a nineteen month period, which were part of a single scheme to fraudulently garner investment in Enchante. Although Plaintiffs claim three victims, Mateu and Delores de Lucas, who are married, purchased securities jointly on two occasions and did not have distinct injuries. The alleged scheme itself was neither complex nor large—the CEO of Enchante, allegedly in concert with his wife, sold securities on the basis of false representations of Enchante's success and future prospects, on three separate occasions to two distinct purchasers. There was no variety in the racketeering acts—the only predicate acts alleged are the fraudulent sale of securities.

In cases "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Jackson*, 372 F.3d at 1267. Given the limited nature of the scheme, the small number and lack of variety within the alleged racketeering acts, and the nature of the predicate acts alleged, the Court finds that Plaintiff has failed to satisfy the requirements of closed-ended continuity. S*ee Efron v. Embassy Suites (P. R.), Inc.,* 223 F.3d 12, 18 (1st Cir. 2000) (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of

14

targeted victims" supports the conclusion that there is no continuity); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (predicate acts occurring over three year period insufficient to allege pattern of racketeering where complaint alleged a single scheme with a single goal and only three victims)).

Plaintiffs have alleged, in a summary fashion, that other investors were defrauded. (ECF No. 106 at ¶¶ 34, 254). They urge the Court to "relax the Rule 9(b) pleading requirements" because information about other defrauded victims is something they can learn in discovery. (ECF No. 122 at 7 n.9). I cannot agree. Plaintiffs filed suit in March 2018 and discovery in this action commenced well prior to the filing of the SAC. Plaintiffs essentially ask the Court to indefinitely suspend their obligation to file a well-pleaded complaint, which is unreasonable on this record. Notably, Plaintiffs' reliance on *Jones v. Childers*, 18 F.3d 899 (11th Cir. 1994), is not helpful here. It addressed the sufficiency of evidence at trial to establish open-ended continuity of a pattern of racketeering activity, and upheld the trial court's allowing the testimony of other victims – not part of the lawsuit – that the defendants had also defrauded them in a similar manner as Plaintiffs. The trial court properly relied upon that testimony, in addition to that of the Plaintiffs, to find continuity. *Id.* at 912-3. *Jones* allows proof of continuity to include evidence of racketeering acts committed against non-Defendants; it does not provide that a plaintiff can survive a motion to dismiss its RICO claim by alleging, on mere "information and belief," that Defendants defrauded others in a similar way.

In sum, because Plaintiff has failed to sufficiently allege (1) distinctness between the "persons" and "enterprise"; and (2) a pattern of racketeering activity, the RICO claim

15

must be dismissed. The earlier motions to dismiss argued the complaint did not met the continuity requirement, and Plaintiffs had an opportunity to remedy this in the SAC. *see* (ECF No. 17, 57). There is no reason to think Plaintiffs can remedy this pleading deficit. I recommend that the Court dismiss with prejudice Plaintiff's RICO claim.[7]

### C. Plaintiffs Have Failed to State a Claim Against Defendant Rey

Defendants also move for dismissal of all claims brought against Defendant Rey. (ECF No. 115 at 13-17). Defendants argue that the Mateu Plaintiffs (Plaintiff Fernau did not bring any claims against Defendant Rey) have failed to state a claim against Rey because the allegations of the SAC fail to satisfy the heightened pleading requirements of Rule 9(b), as well as the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedures. (*Id*.) The Mateu Plaintiffs have brought claims against Rey for violation of Florida and federal securities laws, common law fraud, and violation of Florida's RICO statute. (ECF No. 106).

As previously noted, pursuant to Rule 9(b), fraud claims must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Eleventh Circuit has stated that Rule 9(b) is satisfied if the complaint sets forth

---

[7] Defendants additionally argue that the RICO claim against Rey fails for the additional reason that Plaintiffs have "failed to allege any behavior on Rey's part that is 'distinct from the partnership inherent in any marriage.'" (ECF No. 115 at 16). One of the cases Defendants cite for this proposition, however, was reversed by the Eleventh Circuit, which clarified that whether a married couple could act together as a RICO enterprise was entirely dependent on the facts of the case, and noted that a "marriage certificate does not transform alleged mail and wire fraud into ordinary household management." *Al-Rayes v. Willingham*, 914 F.3d 1302, 1310 (11th Cir. 2019). In sum, Rey is not shielded from RICO liability simply because she is Lamus's wife. Her potential liability is determined by the specific actions she is alleged to have taken or statements she is alleged to have made, which the Court addresses in Section II.C.

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

To state a claim under the anti-fraud provisions of the Securities Exchange Act, Section 10(b) and Rule 10(b)(5) promulgated thereunder, and Section 517.301 of the Florida Securities and Investor Protection Act, a plaintiff is required to allege the following: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Energy Supreme LLC v. Supreme Energy Res., Inc.*, No. 0:15-CV-60034-UU, 2016 WL 3948060, at *3 (S.D. Fla. Jan. 21, 2016) (citing *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 563 U.S. 27, 27 (2011)).

To plead common law fraud, a plaintiff must allege "(1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing ... [that party] to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representations; and (5) resulting damage." *Biscayne Cove Condo. Ass'n v. QBE Ins. Corp.*, 971 F. Supp. 2d 1121, 1145 (S.D. Fla. 2013).

Regarding the requisite specific allegation of a false statement or misrepresentation required for all of these fraud claims, the SAC repeats only this allegation, in the counts brought against Rey, that she "first presented the success of Enchante and its cosmetics

17

business to [the Mateu Plaintiffs]." (ECF No. 106 at ¶¶ 42, 103, 139, 177).[8] This vague and general statement falls far short of satisfying the pleading requirements. "A statement that is vague, generalized, non-verifiable, or mere corporate puffery is immaterial because a reasonable investor would not make a decision based on such" a statement. *See In re Royal Caribbean Cruises Ltd. Sec. Litig.,* No. 1:11–22855–CIV, 2013 WL 3295951, at *12 (S.D. Fla. Apr. 19, 2013) (same). As a result, such statements are unactionable as a matter of law and cannot provide a basis for which to maintain a fraud claim. *See, e.g., Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.,* 572 Fed. Appx. 713, 716 (11th Cir. 2014) (finding that statements about the "rigor" of defendant's processes, the "efficiency" and "accuracy" of its operations and its "effective" staff training were not material because the statements did not assert specific and verifiable facts that a reasonable investor would rely upon).

The analysis of whether a particular statement is mere puffery is fact-specific and requires consideration of context. *Mogensen v. Body Cent. Corp.,* 15 F. Supp. 3d 1191, 1212 (M.D. Fla. 2014). Plaintiff's single allegation, however, is so vague as to be

---

[8] All other allegations that implicate Rey do not differentiate between the Defendants or Lamus and Rey, such that it is unclear what statements were made by whom. (*See, e.g.*, ECF No. 106 at ¶ 16, "In connection with the sale of securities to Mateu, Defendants relied upon a document entitled Investment Memo, Executive Summary or a document similar thereto."). Plaintiffs cannot satisfy the applicable pleading standards with general allegations that do not differentiate between the Defendants. *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006), aff'd sub nom. *Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675 (11th Cir. 2009) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8 . . . . As such, the individual defendants cannot determine from the face of the Complaint which acts or omissions the Plaintiffs seek to hold each of them liable.").

essentially meaningless. For example, the allegation that Rey "presented the success" of Enchante could mean that she presented areas or endeavors in which the business had already succeeded, despite other challenges and/or financial difficulties. We are left to guess what this statement means.

I recommend that the Court dismiss with leave to amend Counts I, IV, VI and VIII against Rey.

## III. RECOMMENDATIONS

For the foregoing reasons, I RECOMMEND that the Court GRANT Defendants' Consolidated Motion to Dismiss (ECF No. 115) and dismiss with prejudice Count X as against all Plaintiffs, and dismiss without prejudice Counts I, IV, VI, VIII against Rey.

## IV. OBJECTIONS

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Robert N. Scola, Jr., who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 17th day of September, 2019.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Robert N. Scola, Jr.
     Counsel of record