## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

JULIAN FERNAU, FERNANDO
MATEU, AND MARIA DOLORES
DE LUCAS,

     *Plaintiffs*,

  v.

ENCHANTE BEAUTY PRODUCTS,
INC., RAUL LAMUS, AND MARIA
FERNANDA REY,

     *Defendants*.

CASE NO. 1:18-cv-20866-RNS

REQUEST FOR JURY TRIAL

## VERIFIED AMENDED COMPLAINT

COME NOW, Plaintiffs, Julian Fernau, Fernando Mateu, and Maria Dolores de Lucas and file this civil complaint against Defendants, Enchante Beauty Products, Inc., Raul Lamus, and Maria Fernanda Rey.

### JURISDICTION AND VENUE

1.    This Court has original jurisdiction pursuant to 28 U.S.C. §1331. This is a civil action arising under the Constitution, laws, or treaties of the United States. The Court also has exclusive jurisdiction pursuant to §27 of the Securities Exchange Act of 1934 ("**Exchange Act**"), 15 U.S.C. §78aa, because this civil action involves violations of the rules and regulations thereunder.

2.      This Court further has supplemental jurisdiction under 28 U.S.C. §1367 over all other claims herein because such claims form part of the same case or controversy.

3.      Personal jurisdiction over Defendants is present in the State of Florida in accordance with Fla. Stat. §48.193.  Defendants (i) operated, conducted, engaged in, or carried on a business or business venture in this state or had an office or agency in this state, (ii) committed a tortious act within this state, and (iii) engaged in substantial and not isolated activity within this state.  Further, personal jurisdiction is established under §27 of the Exchange Act, 15 U.S.C. §78aa.  Defendants can be found, inhabit, or transact business within the Southern District of Florida.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).  The Southern District of Florida is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.  Further, Enchante is deemed a resident of this District.

## PARTIES

5.      Enchante Beauty Products, Inc. ("**Enchante**") is a Florida profit corporation with its principal place of business located at 8600 NW South River Drive, Suite 215, Medley, FL 33166.  Enchante was formed on November 9, 2015

in the State of Florida.  On January 6, 2016, Beauty Care Partners Strategic

Channels, Inc., a Delaware corporation, was merged into Enchante.

6.     Raul Lamus ("**Lamus**") was the chief executive officer and a director

of Enchante.  Upon information and belief, Lamus, as of March 7, 2018 (date of

filing of the Complaint), was a foreign resident in Spain.  During the time of the

relevant facts to this Complaint, Lamus resided in Miami, Florida.

7.     Maria Fernanda Rey ("**Rey**") is the wife of Mr. Lamus and is believed

to have resided with him through the date of joinder of Mrs. Rey as a party to this

litigation.

8.     Julian Fernau ("**Fernau**") is a resident of Miami-Dade County,

Florida.

9.     Fernando Mateu and Maria Dolores De Lucas ("jointly referred to

herein as **Mateu**") are husband and wife and reside in Miami-Dade County,

Florida.

## FACTUAL BACKGROUND

10.     This lawsuit is a civil action for violation of the state and federal

securities laws.  Lamus and Rey, husband and wife, orchestrated a fraud by way of

material misstatements and omissions in connection with the sale of the securities

of Enchante.

## August 2015 Sale of Securities to Mateu

11.     In August of 2015, Lamus solicited Mateu for the investment of one hundred thousand dollars ($100,000.00) into Enchante.[1]  The investment was solicited with material misstatements and omissions in violation of both state and federal securities laws.

12.     The misrepresentations and omissions occurred in or about July 8, 2015 to August 5, 2015.  Lamus organized two in-person meetings in Miami for the purpose of solicitation and sale of the investment to Mateu.

13.     In soliciting the investment to Mateu, Lamus relied upon the means and instrumentality of interstate commerce, including wire communications. Communications were made by electronic mail, telephone, and/or electronic instant messaging in or about July 8, 2015 to August 5, 2015 to promote Enchante and the sale of the investment to Mateu.

14.     Although the subscription agreement states that Mateu had been provided with "an opportunity to discuss with management of the Company and to ask questions about the Company's current and prospective financial condition, assets and liabilities, business operations, sales, sales prospects, strategic initiatives and business plans," the information provided by Lamus was materially false and

---

[1] A copy of the subscription agreement for securities appears as Docket Number 20-1.

misleading and he omitted to disclose all material information in connection with the sale of the securities.

15.     Such misrepresentations and omissions included that Enchante was nearing break-even and that a six to eight percent (6 – 8%) dividend would be expected for 2016.

16.     The foregoing statements were false.  Cash flows were negative and the survival of the company relied upon use of new investors' funds.  Enchante was experiencing heavy financial losses.  No dividend could or would be declared.

17.     In connection with the sale of the securities to Mateu, Lamus relied upon a document entitled Investor Questions, July 10, 2015.[2]  The disclosures contained in the document were materially false and misleading and/or the document contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

   A. Enchante's Colombia operations were generating about two thousand dollars ($2,000.00) per month profit based upon ten thousand dollars ($10,000.00) per month revenue.

   B. Second quarter 2015 revenue for Enchante's Colombia operations was forty-eight thousand dollars ($48,000.00).

---

[2] A copy of the Investor Questions Memorandum is attached as Exhibit "A."

C. Eight hundred thousand dollars ($800,000.00) cash was invested into Enchante and two hundred eighty thousand dollars ($280,000.00) in loans was received.

D. The investment offering, including Mateu's funds, would be used for product purchases ($120,000.00), a cash cushion until break-even ($60,000.00) was achieved by the company, and marketing and other expenses ($20,000.00). More particularly, as provided in the "Appendix – Full Use of Proceeds", the use of funds included product inventory, salon opening acceleration, state / geographic expansion, hiring of a trade marketing and logistics person, investment into the La Biosthetique salon / academy, and marketing investment into advertising, sampling, and testing.

18.     The foregoing statements were false. Enchante's Colombia operations were not operating at a profit. The company did not have legitimate sales in Colombia of forty-eight thousand dollars ($48,000.00) in Q2, 2015. The amount of investment into Enchante was grossly overstated. The proceeds from the sale of securities to Mateu were not applied in accordance with the specified allocations.

19.     Concurrently with the distribution of the July 10, 2015 Investor Questions, Lamus emailed financial statements purporting to present the financial

state of affairs of Enchante.[3]  The disclosures contained in the documents were

materially false and misleading and/or the documents contained forecasts and

assumptions which lacked any reasonable basis in fact.  Such misrepresentations

and omissions included that:

A. The Colombia business operation segment had first quarter 2015

revenue of forty-eight thousand dollars ($48,000.00) and an after-tax profit

of twelve thousand two hundred fifty-eight dollars ($12,258.00).

B. The Colombia business operation segment had second quarter 2015

revenue of seventy-two thousand dollars ($72,000.00) and an after-tax profit

of twenty-five thousand one hundred thirty-eight dollars ($25,138.00).

C. The Colombia business operation segment could reasonably expect

third quarter 2015 revenue of one hundred thousand dollars ($100,000.00)

and an after-tax profit of twenty-nine thousand eight hundred fifty-nine

dollars ($29,859.00).

D. The Colombia business operation segment could reasonably expect

fourth quarter 2015 revenue of ninety-six thousand dollars ($96,000.00) and

an after-tax profit of twenty-eight thousand two hundred ninety-nine dollars

($28,299.00).

---

[3] Lamus Email Communication, July 8, 2015. Exhibit "D."

E.  The U.S. operation segment had second quarter 2015 revenue of one hundred twenty-three thousand three hundred thirty-three dollars ($123,333).

F.  The U.S. business operation segment could reasonably expect third quarter 2015 revenue of one hundred forty-five thousand one hundred nine dollars ($145,109.00).

G. The U.S. business operation segment could reasonably expect fourth quarter 2015 revenue of one hundred ninety-two thousand five hundred thirteen dollars ($192,513.00) and thereby approximately lead to break-even by the fourth quarter of 2015.

20.    The foregoing statements were false.  Upon information and belief, including that information provided by former Director Gustavo Souss,[4] neither the Colombia nor U.S. operations of Enchante had ever reached a point of profitability. The revenue disclosures were grossly overstated for the relevant time periods and the forecasted projections unreasonable.

21.    In soliciting the August 2015 sale to Mateu, Lamus omitted to disclose the following material information:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in

---

[4] January 8, 2018 Resignation Letter of Gusavo Souss. Exhibit "B."

retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B.  Enchante had either poor or nonexistent credit extension policies. This led to salesmen opening new accounts and selling products to collect commissions without due regard of the clients' ability to pay.

C.  Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.[5]

D.  Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

### December 2015 Sale of Securities to Mateu

22.     In December of 2015, Lamus and Rey solicited Mateu for an additional investment of six thousand dollars ($6,000) into Enchante.[6]

23.     Enchante's securities were not covered by a state or federal registration statement.

---

[5] La Biosthetique Notice of Termination, December 2017. Exhibit "C."

[6] A copy of the securities purchase agreement appears in the Docket under number 20-2.

24.     Mrs. Rey, as the seller of the unregistered securities of Enchante, had an affirmative duty to provide information disclosure to Mateu, including material information regarding Enchante's business and operations.

25.     Mrs. Rey failed to provide any substantive disclosure to Mateu.  She instead relied upon those disclosures made by her husband, but, as provided herein, such disclosures were false and materially misleading.

26.     Mrs. Rey failed to correct the misstatements and/or provide responsive information to the omissions her husband made in August of 2015.  In particular, Mrs. Rey failed to disclose that:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.

C. Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

D. The financial information provided by Mr. Lamus in July to August of 2015 was false and materially misleading, including grossly overstated revenue and profitability disclosures as well as unsupportable forecasts.

27.    Mr. Lamus was involved in the December 2015 securities sale to Mateu.  Although his wife, Mrs. Rey, was the owner and seller of the unregistered securities, Mr. Lamus organized the sale to Mateu.

28.    In or about December 2015, Mr. Lamus informed Mateu that another shareholder, Pablo Toloso, was in need of selling his shares due to a change in immigration status.  He thereby solicited Mateu for the purchase of the securities and then sent Mrs. Rey to close the transaction directly and collect the proceeds from sale.

### 2017 Sale of Securities to Julian Fernau

29.    Between February and March of 2017, Lamus solicited Fernau for the investment of sixty-two thousand five hundred dollars ($62,500.00) into Enchante.[7]

30.    Much the same as Mateu, the Fernau investment was solicited and sold with material misstatements and omissions of material fact.  Lamus was aware of the poor and deteriorating financial performance of Enchante and substantial,

---

[7] A copy of the March 29, 2017 subscription agreement appears under Docket Number 20-3.

unpaid liabilities, but failed to disclose this information at the time of the sale of the securities.

31.     Although the subscription agreement states that Fernau had been provided with "access to all information, including financial statements and other financial information of the Company, and has been afforded an opportunity to ask questions of and receive answers from the Company," the information he had received from Lamus, on behalf of Enchante, was false and materially misleading.

32.     These misrepresentations included:

    A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.

    B. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

    C. Lamus represented that Enchante, at the time of sale, had a valuation of one million two hundred fifty thousand dollars ($1,250,000.00) or more.

33.     The foregoing statements were false and/or materially misleading. Enchante was incurring substantial losses when the sale of the securities occurred.

Enchante had unpaid and substantial liabilities, including unpaid taxes in
Colombia, unpaid accounts payable and royalties to Enchante's primary supplier,
La Biosthetique, and amounts claimed by Lamus himself for back due salaries and
expenses.

34.     The consignment arrangements resulted in inflated revenue because
sales were recognized when product was shipped, but retail stores had no
obligation to pay for the products prior to their sale to the end-user or customer.

35.     The business valuation was grossly inflated and did not rely upon
reasonable valuation assumptions.

36.     Lamus knew, at the time of the sale of the securities, that the company
engaged in questionable sales practices.  These questionable sales practices
involved the sale of goods on credit to retailers which were either a poor credit risk
or known to be uncollectible.

37.     In addition, Lamus omitted to disclose material information in
connection with the sale of securities to Fernau.  Such omissions included:

A. Lamus failed to disclose the material liabilities Enchante had when he
solicited and sold the investment, including unpaid taxes in Colombia and
royalties past due to Enchante's supplier, La Biosthetique.

B. Lamus failed to disclose that the financial statements of Enchante did
not comport with Generally Accepted Accounting Principles (GAAP).

C. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Enchante had either poor or nonexistent credit extension policies, leading to salesmen opening new accounts and selling products, thereby collecting commissions without due regard of the clients' ability to pay.

D. Lamus failed to disclose that on or about October 17, 2016, Fernando Mateu and his wife requested rescission of their 2015 securities purchases.

E. Lamus failed to disclose that in response to the October 17, 2016 request for rescission by Mateu, Lamus disclosed the lack of liquidity and insolvency of Enchante and sought to pay back Mateu's investment with the use of new investors' funds.

38.     In soliciting the investment to Fernau, Lamus provided, in a March 1, 2017 email communication,[8] that:

A. Enchante had a one million two hundred fifty thousand dollar ($1,250,000.00) valuation.

B. At least fifty percent (50%) of the initial investment by Fernau would remain in the company.

_____

[8] A copy of the March 1, 2017 email communication appears under Docket Number 106-3.

39.     The foregoing statements were false and materially misleading when made.  This valuation was grossly inflated and did not rely upon reasonable assumptions.  Fifty percent (50%) of the initial investment did not remain within the company, but was quickly spent, including for payment of such items as Lamus' claims for past due personal salary and expenses.

40.     By March of 2017, Enchante was already on the verge of collapse. Not only were the foregoing statements false and materially misleading when made, but by 2017, it was known that such statements had no reasonable basis in fact.  Enchante had never reached a point of profitability for which dividends could be paid.  The use of proceeds did not follow the representations made.

41.     By 2017, Enchante had nominal value because of its mounting liabilities.  Lamus was personally aware of the impossibility of reaching his prior sales and growth forecasts, yet continued to make such unsupportable representations to Fernau.

## COUNT I
## RESCISSION UNDER THE FLORIDA SECURITIES AND
## INVESTOR PROTECTION ACT
## (FLA STAT. §517.211)
(Mateu vs. Lamus and Enchante)

42.     The allegations contained in paragraphs 1 through 41 are hereby

incorporated by reference as if such were restated in full.

43.     Pursuant to Fla. Stat. §517.211(2), any person purchasing or selling a

security in violation of §517.301, and every director, officer, partner, or agent of or

for the purchaser or seller, if the director, officer, partner, or agent has personally

participated or aided in making the sale or purchase, is jointly and severally liable

to the person selling the security to or purchasing the security from such person in

an action for rescission.

44.     Fla. Stat. §517.211(6) provides that in any action brought under

§517.211, including an appeal, the court shall award reasonable attorneys' fees to

the prevailing party unless the court finds that the award of such fees would be

unjust.

45.     The statute of limitations for actions under Chapter 517 of the Florida

Statutes is set forth in Fla. Stat. §95.11(4)(e).  Such provides a two (2) year statute

of limitations with the period running from the time the facts giving rise to the

cause of action were discovered, or should have been discovered with the exercise

of due diligence, but not more than five (5) years from the date such violation occurred.

46.     Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

47.     Lamus and Enchante violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Mateu.

48.     In August of 2015, Lamus solicited Mateu for the investment of one hundred thousand dollars ($100,000.00) into Enchante.[9]  The investment was

---

[9] A copy of the subscription agreement for securities appears as Docket Number 20-1.

solicited with material misstatements and omissions in violation of both state and federal securities laws.

49.    The misrepresentations and omissions occurred in or about July 8, 2015 to August 5, 2015.  Lamus organized two in-person meetings in Miami for the purpose of solicitation and sale of the investment to Mateu.

50.    In soliciting the investment to Mateu, Lamus relied upon the means and instrumentality of interstate commerce, including wire communications. Communications were made by electronic mail, telephone, and/or electronic instant messaging in or about July 8, 2015 to August 5, 2015 to promote Enchante and the sale of the investment to Mateu.

51.    Although the subscription agreement states that Mateu had been provided with "an opportunity to discuss with management of the Company and to ask questions about the Company's current and prospective financial condition, assets and liabilities, business operations, sales, sales prospects, strategic initiatives and business plans," the information provided by Lamus was materially false and misleading and he omitted to disclose all material information in connection with the sale of the securities.

52.    Such misrepresentations and omissions included that Enchante was nearing break-even and that a six to eight percent (6 – 8%) dividend would be expected for 2016.

53.     The foregoing statements were false.  Cash flows were negative and the survival of the company relied upon use of new investors' funds.  Enchante was experiencing heavy financial losses.  No dividend could or would be declared.

54.     In connection with the sale of the securities to Mateu, Lamus relied upon a document entitled Investor Questions, July 10, 2015.[10]  The disclosures contained in the document were materially false and misleading and/or the document contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

   A. Enchante's Colombia operations were generating about two thousand dollars ($2,000.00) per month profit based upon ten thousand dollars ($10,000.00) per month revenue.

   B. Second quarter 2015 revenue for Enchante's Colombia operations was forty-eight thousand dollars ($48,000.00).

   C. Eight hundred thousand dollars ($800,000.00) cash was invested into Enchante and two hundred eighty thousand dollars ($280,000.00) in loans was received.

   D. The investment offering, including Mateu's funds, would be used for product purchases ($120,000.00), a cash cushion until break-even ($60,000.00) was achieved by the company, and marketing and other

_____

[10] A copy of the Investor Questions Memorandum is attached as <u>Exhibit "A."</u>

expenses ($20,000.00).  More particularly, as provided in the "Appendix –

Full Use of Proceeds", the use of funds included product inventory, salon

opening acceleration, state / geographic expansion, hiring of a trade

marketing and logistics person, investment into the La Biosthetique salon /

academy, and marketing investment into advertising, sampling, and testing.

55.     The foregoing statements were false.  Enchante's Colombia

operations were not operating at a profit.  The company did not have legitimate

sales in Colombia of forty-eight thousand dollars ($48,000.00) in Q2, 2015.  The

amount of investment into Enchante was grossly overstated.  The proceeds from

the sale of securities to Mateu were not applied in accordance with the specified

allocations.

56.     Concurrently with the distribution of the July 10, 2015 Investor

Questions, Lamus emailed financial statements purporting to present the financial

state of affairs of Enchante.[11]  The disclosures contained in the documents were

materially false and misleading and/or the documents contained forecasts and

assumptions which lacked any reasonable basis in fact.  Such misrepresentations

and omissions included that:

---

[11] Lamus Email Communication, July 8, 2015. Exhibit "D."

A. The Colombia business operation segment had first quarter 2015 revenue of forty-eight thousand dollars ($48,000.00) and an after-tax profit of twelve thousand two hundred fifty-eight dollars ($12,258.00).

B. The Colombia business operation segment had second quarter 2015 revenue of seventy-two thousand dollars ($72,000.00) and an after-tax profit of twenty-five thousand one hundred thirty-eight dollars ($25,138.00).

C. The Colombia business operation segment could reasonably expect third quarter 2015 revenue of one hundred thousand dollars ($100,000.00) and an after-tax profit of twenty-nine thousand eight hundred fifty-nine dollars ($29,859.00).

D. The Colombia business operation segment could reasonably expect fourth quarter 2015 revenue of ninety-six thousand dollars ($96,000.00) and an after-tax profit of twenty-eight thousand two hundred ninety-nine dollars ($28,299.00).

E. The U.S. operation segment had second quarter 2015 revenue of one hundred twenty-three thousand three hundred thirty-three dollars ($123,333).

F. The U.S. business operation segment could reasonably expect third quarter 2015 revenue of one hundred forty-five thousand one hundred nine dollars ($145,109.00).

G. The U.S. business operation segment could reasonably expect fourth quarter 2015 revenue of one hundred ninety-two thousand five hundred thirteen dollars ($192,513.00) and thereby approximately lead to break-even by the fourth quarter of 2015.

57.     The foregoing statements were false.  Upon information and belief, including that information provided by former Director Gustavo Souss,[12] neither the Colombia nor U.S. operations of Enchante had ever reached a point of profitability.  The revenue disclosures were grossly overstated for the relevant time periods and the forecasted projections unreasonable.

58.     In soliciting the August 2015 sale to Mateu, Lamus omitted to disclose the following material information:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

---

[12] January 8, 2018 Resignation Letter of Gusavo Souss. Exhibit "B."

B.  Enchante had either poor or nonexistent credit extension policies. This led to salesmen opening new accounts and selling products to collect commissions without due regard of the clients' ability to pay.

C.  Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.[13]

D.  Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

59.     Had Lamus made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company.  Mateu's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

60.     The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within approximately two (2) years of Mateu's investment. Among other factors, the failure to use the proceeds as intended resulted in excessive payments to Lamus, as opposed to product inventory, store development, and the creation of product distribution channels.

---

[13] La Biosthetique Notice of Termination, December 2017. Exhibit "C."

61.     This cause of action is brought within the statute of limitations period set forth under Fla. Stat. §95.11(4)(e) because it was filed within two (2) years of the time that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence, and within five (5) years of the date of violation.  Mateu discovered the facts surrounding Defendants' misrepresentations and omissions on or after October of 2016.

**COUNT II**
**RESCISSION UNDER THE FLORIDA SECURITIES AND**
**INVESTOR PROTECTION ACT**
**(FLA STAT. §517.211)**
(Mateu vs. All Defendants)

62.     The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

63.     Pursuant to Fla. Stat. §517.211(2), any person purchasing or selling a security in violation of §517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission.

64.     Fla. Stat. §517.211(6) provides that in any action brought under §517.211, including an appeal, the court shall award reasonable attorneys' fees to

the prevailing party unless the court finds that the award of such fees would be unjust.

65.     The statute of limitations for actions under Chapter 517 of the Florida Statutes is set forth in Fla. Stat. §95.11(4)(e).  Such provides a two (2) year statute of limitations with the period running from the time the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence, but not more than five (5) years from the date such violation occurred.

66.     Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

67.     Lamus, Rey, and Enchante violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material

fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Mateu.

68.    In December of 2015, Lamus and Rey solicited Mateu for an additional investment of six thousand dollars ($6,000) into Enchante.[14]

69.    Enchante's securities were not covered by a state or federal registration statement.

70.    Mrs. Rey, as the seller of the unregistered securities of Enchante, had an affirmative duty to provide information disclosure to Mateu, including material information regarding Enchante's business and operations.

71.    Mrs. Rey failed to provide any substantive disclosure to Mateu.  She instead relied upon those disclosures made by her husband, but, as provided herein, such disclosures were false and materially misleading.

72.    Mrs. Rey failed to correct the misstatements and/or provide responsive information to the omissions her husband made in August of 2015.  In particular, Mrs. Rey failed to disclose that:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in

_____

[14] A copy of the securities purchase agreement appears in the Docket under number 20-2.

retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.

C. Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

D. The financial information provided by Mr. Lamus in July to August of 2015 was false and materially misleading, including grossly overstated revenue and profitability disclosures as well as unsupportable forecasts.

73.    Mr. Lamus was involved in the December 2015 securities sale to Mateu.  Although his wife, Mrs. Rey, was the owner and seller of the unregistered securities, Mr. Lamus organized the sale to Mateu.

74.    In or about December 2015, Mr. Lamus informed Mateu that another shareholder, Pablo Toloso, was in need of selling his shares due to a change in immigration status.  He thereby solicited Mateu for the purchase of the securities and then sent Mrs. Rey to close the transaction directly and collect the proceeds from sale.

75.    Lamus and Rey were aware of the poor financial performance of Enchante at the time of sale, or were severely reckless in not knowing, but failed to

disclose the particular risk factors to Mateu as well as those negative events that had already materialized by December of 2015.

76.     Had Lamus and Rey made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company. Mateu's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.  Rey is Lamus' wife and was the seller of the unregistered securities.

77.     The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within approximately two (2) years of Mateu's investment. Among other factors, the failure to use the proceeds as intended resulted in excessive payments to Lamus, as opposed to product inventory, store development, and the creation of product distribution channels.

78.     This cause of action is brought within the statute of limitations period set forth under Fla. Stat. §95.11(4)(e) because it was filed within two (2) years of the time that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence, and within five (5) years of the date of violation.  Mateu discovered the facts surrounding Defendants' misrepresentations and omissions on or after October of 2016.

**COUNT III**
**RESCISSION UNDER THE FLORIDA SECURITIES AND**
**INVESTOR PROTECTION ACT**
**(FLA STAT. §517.211)**
(Fernau vs. Lamus and Enchante)

79.     The allegations contained in paragraphs 1 through 41 are hereby

incorporated by reference as if such were restated in full.

80.     Pursuant to Fla. Stat. §517.211(2), any person purchasing or selling a

security in violation of §517.301, and every director, officer, partner, or agent of or

for the purchaser or seller, if the director, officer, partner, or agent has personally

participated or aided in making the sale or purchase, is jointly and severally liable

to the person selling the security to or purchasing the security from such person in

an action for rescission.

81.     Fla. Stat. §517.211(6) provides that in any action brought under

§517.211, including an appeal, the court shall award reasonable attorneys' fees to

the prevailing party unless the court finds that the award of such fees would be

unjust.

82.     The statute of limitations for actions under Chapter 517 of the Florida

Statutes is set forth in Fla. Stat. §95.11(4)(e).  Such provides a two (2) year statute

of limitations with the period running from the time the facts giving rise to the

cause of action were discovered, or should have been discovered with the exercise

of due diligence, but not more than five (5) years from the date such violation occurred.

83.     Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

84.     Lamus and Enchante violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Fernau.

85.     Between February and March of 2017, Lamus solicited Fernau for the investment of sixty-two thousand five hundred dollars ($62,500.00) into Enchante.[15]

---

[15] A copy of the March 29, 2017 subscription agreement appears under Docket Number 20-3.

86.     Much the same as Mateu, the Fernau investment was solicited and sold with material misstatements and omissions of material fact.  Lamus was aware of the poor and deteriorating financial performance of Enchante and substantial, unpaid liabilities, but failed to disclose this information at the time of the sale of the securities.

87.     Although the subscription agreement states that Fernau had been provided with "access to all information, including financial statements and other financial information of the Company, and has been afforded an opportunity to ask questions of and receive answers from the Company," the information he had received from Lamus, on behalf of Enchante, was false and materially misleading.

88.     These misrepresentations included:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.

B. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

C. Lamus represented that Enchante, at the time of sale, had a valuation of one million two hundred fifty thousand dollars ($1,250,000.00) or more.

89.     The foregoing statements were false and/or materially misleading. Enchante was incurring substantial losses when the sale of the securities occurred. Enchante had unpaid and substantial liabilities, including unpaid taxes in Colombia, unpaid accounts payable and royalties to Enchante's primary supplier, La Biosthetique, and amounts claimed by Lamus himself for back due salaries and expenses.

90.     The consignment arrangements resulted in inflated revenue because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to their sale to the end-user or customer.

91.     The business valuation was grossly inflated and did not rely upon reasonable valuation assumptions.

92.     Lamus knew, at the time of the sale of the securities, that the company engaged in questionable sales practices.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

93.     In addition, Lamus omitted to disclose material information in connection with the sale of securities to Fernau.  Such omissions included:

A. Lamus failed to disclose the material liabilities Enchante had when he solicited and sold the investment, including unpaid taxes in Colombia and royalties past due to Enchante's supplier, La Biosthetique.

B. Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

C. Lamus failed to disclose problems in Enchante's sales and distribution structure. In particular, Enchante had either poor or nonexistent credit extension policies, leading to salesmen opening new accounts and selling products, thereby collecting commissions without due regard of the clients' ability to pay.

D. Lamus failed to disclose that on or about October 17, 2016, Fernando Mateu and his wife requested rescission of their 2015 securities purchases.

E. Lamus failed to disclose that in response to the October 17, 2016 request for rescission by Mateu, Lamus disclosed the lack of liquidity and insolvency of Enchante and sought to pay back Mateu's investment with the use of new investors' funds.

94.    In soliciting the investment to Fernau, Lamus provided, in a March 1, 2017 email communication,[16] that:

---

[16] A copy of the March 1, 2017 email communication appears under Docket Number 106-3.

A. Enchante had a one million two hundred fifty thousand dollar ($1,250,000.00) valuation.

B. At least fifty percent (50%) of the initial investment by Fernau would remain in the company.

95.     The foregoing statements were false and materially misleading when made.  This valuation was grossly inflated and did not rely upon reasonable assumptions.  Fifty percent (50%) of the initial investment did not remain within the company, but was quickly spent, including for payment of such items as Lamus' claims for past due personal salary and expenses.

96.     By March of 2017, Enchante was already on the verge of collapse. Not only were the foregoing statements false and materially misleading when made, but by 2017, it was known that such statements had no reasonable basis in fact.  Enchante had never reached a point of profitability for which dividends could be paid.  The use of proceeds did not follow the representations made.

97.     By 2017, Enchante had nominal value because of its mounting liabilities.  Lamus was personally aware of the impossibility of reaching his prior sales and growth forecasts, yet continued to make such unsupportable representations to Fernau.

98.     Had Lamus made full and accurate disclosure at the time of the sale of the securities, Fernau would not have invested into the company.  Fernau's reliance

was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

99.    The untrue statements and omissions of material fact were the proximate cause of Fernau's loss.  Due to the poor financial state of the company, Enchante failed less than one year after Fernau's investment.  At the time of Fernau's investment, Enchante was already on the verge of collapse due to its failure to develop revenue channels and substantial, unpaid liabilities.

100.   On January 26, 2018, Fernau, through his attorney, sent a notice of rescission to Lamus and Enchante, requesting the return of the sixty-two thousand five hundred dollars ($62,500) invested.

101.   Lamus and Enchante failed to tender Fernau's funds.

102.   Pursuant to Fla. Stat §517.211(6), Fernau requests an award of reasonable attorneys' fees.

## COUNT IV
## RESCISSION UNDER §29(b) OF THE SECURITIES
## EXCHANGE ACT OF 1934
## (15 U.S.C. §78CC)
(Fernau vs. Lamus and Enchante)

103.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

104.   Pursuant to §29(b) of the Exchange Act, every contract made in violation of, or the performance of a contract which involves the violation of, any

provision of 15 U.S.C. §§78a, *et seq*. is void with regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract.

105.   The investment contract with Fernau was entered into and made in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j, and promulgated rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

106.   §10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

107.   Lamus and Enchante violated §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder and used the means and instrumentality of interstate commerce, including the mails, in the consummation of their fraud.  The following are some of the wire communications made by Lamus in connection with the sale of the securities to Fernau:

> A. Email communication on February 28, 2017, from Lamus to Fernau, containing a pro forma income statement for 2017.[17]

---

[17] A copy of the communication appears under Docket Number 106-5.

    B.  Email communication on March 1, 2017, from Lamus to Fernau.[18]

    C.  Email communication on March 3, 2017, distributing an Investment Memo Executive Summary.[19]

    D.  Email communication on March 6, 2017, from Lamus to Fernau.[20]

108.   Between February and March of 2017, Lamus solicited Fernau for the investment of sixty-two thousand five hundred dollars ($62,500.00) into Enchante.[21]

109.   Much the same as Mateu, the Fernau investment was solicited and sold with material misstatements and omissions of material fact.  Lamus was aware of the poor and deteriorating financial performance of Enchante and substantial, unpaid liabilities, but failed to disclose this information at the time of the sale of the securities.

110.   Although the subscription agreement states that Fernau had been provided with "access to all information, including financial statements and other financial information of the Company, and has been afforded an opportunity to ask

---

[18] A copy of the communication appears under Docket Number 106-3.

[19] A copy of the Investment Memo appears under Docket Number 106-1.

[20] A copy of the communication appears under Docket Number 106-4.

[21] A copy of the March 29, 2017 subscription agreement appears under Docket Number 20-3.

questions of and receive answers from the Company," the information he had received from Lamus, on behalf of Enchante, was false and materially misleading.

111.   These misrepresentations included:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.

B. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

C. Lamus represented that Enchante, at the time of sale, had a valuation of one million two hundred fifty thousand dollars ($1,250,000.00) or more.

112.   The foregoing statements were false and/or materially misleading. Enchante was incurring substantial losses when the sale of the securities occurred. Enchante had unpaid and substantial liabilities, including unpaid taxes in Colombia, unpaid accounts payable and royalties to Enchante's primary supplier, La Biosthetique, and amounts claimed by Lamus himself for back due salaries and expenses.

113.    The consignment arrangements resulted in inflated revenue because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to their sale to the end-user or customer.

114.    The business valuation was grossly inflated and did not rely upon reasonable valuation assumptions.

115.    Lamus knew, at the time of the sale of the securities, that the company engaged in questionable sales practices.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

116.    In addition, Lamus omitted to disclose material information in connection with the sale of securities to Fernau.  Such omissions included:

A. Lamus failed to disclose the material liabilities Enchante had when he solicited and sold the investment, including unpaid taxes in Colombia and royalties past due to Enchante's supplier, La Biosthetique.

B. Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

C. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Enchante had either poor or nonexistent credit extension policies, leading to salesmen opening new accounts and selling

products, thereby collecting commissions without due regard of the clients'
ability to pay.

D. Lamus failed to disclose that on or about October 17, 2016, Fernando
Mateu and his wife requested rescission of their 2015 securities purchases.

E. Lamus failed to disclose that in response to the October 17, 2016
request for rescission by Mateu, Lamus disclosed the lack of liquidity and
insolvency of Enchante and sought to pay back Mateu's investment with the
use of new investors' funds.

117. In soliciting the investment to Fernau, Lamus provided, in a March 1,
2017 email communication,[22] that:

A. Enchante had a one million two hundred fifty thousand dollar
($1,250,000.00) valuation.

B. At least fifty percent (50%) of the initial investment by Fernau would
remain in the company.

118. The foregoing statements were false and materially misleading when
made. This valuation was grossly inflated and did not rely upon reasonable
assumptions. Fifty percent (50%) of the initial investment did not remain within

---

[22] A copy of the March 1, 2017 email communication appears under Docket Number
106-3.

the company, but was quickly spent, including for payment of such items as Lamus' claims for past due personal salary and expenses.

119.   By March of 2017, Enchante was already on the verge of collapse. Not only were the foregoing statements false and materially misleading when made, but by 2017, it was known that such statements had no reasonable basis in fact.  Enchante had never reached a point of profitability for which dividends could be paid.  The use of proceeds did not follow the representations made.

120.   By 2017, Enchante had nominal value because of its mounting liabilities.  Lamus was personally aware of the impossibility of reaching his prior sales and growth forecasts, yet continued to make such unsupportable representations to Fernau.

121.   Lamus' untrue statements of material fact and omissions to disclose material facts in connection with the sale of the securities to Fernau constitute devices, schemes, and artifices to defraud and constitute acts, practices, or courses of conduct which operated as fraud or deceit within the meaning of §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder.

122.   Had Lamus made full and accurate disclosure at the time of the sale of the securities, Fernau would not have invested into the company.  Fernau's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

123.    The untrue statements and omissions of material fact were the proximate cause of Fernau's loss.  Due to the poor financial state of the company, Enchante failed less than one year after Fernau's investment.  At the time of Fernau's investment, Enchante was already on the verge of collapse due to its failure to develop revenue channels and substantial, unpaid liabilities.

124.    Lamus and Enchante acted with scienter in the consummation of their fraudulent scheme.  The omissions and misrepresentations were not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care and misled Fernau.  Lamus was personally aware of the poor financial condition of Enchante as he was the chief executive officer and director and was primarily responsible for the creation and maintenance of the books and records of the company.

125.    On January 26, 2018, Fernau, through his attorney, sent a notice of rescission to Defendants, requesting the return of the sixty-two thousand five hundred dollars ($62,500) invested.

126.    Lamus and Enchante failed to tender Fernau's funds.

## COUNT V
## FRAUD IN CONNECTION WITH THE SALE OF A SECURITY
### (Fla. Stat. §517.301)
(Mateu vs. Lamus and Enchante)

127.    The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

128.    Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

129.    Lamus and Enchante violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Mateu.

130.    In August of 2015, Lamus solicited Mateu for the investment of one hundred thousand dollars ($100,000.00) into Enchante.[23]  The investment was solicited with material misstatements and omissions in violation of both state and federal securities laws.

---

[23] A copy of the subscription agreement for securities appears as Docket Number 20-1.

131.   The misrepresentations and omissions occurred in or about July 8, 2015 to August 5, 2015.  Lamus organized two in-person meetings in Miami for the purpose of solicitation and sale of the investment to Mateu.

132.   In soliciting the investment to Mateu, Lamus relied upon the means and instrumentality of interstate commerce, including wire communications. Communications were made by electronic mail, telephone, and/or electronic instant messaging in or about July 8, 2015 to August 5, 2015 to promote Enchante and the sale of the investment to Mateu.

133.   Although the subscription agreement states that Mateu had been provided with "an opportunity to discuss with management of the Company and to ask questions about the Company's current and prospective financial condition, assets and liabilities, business operations, sales, sales prospects, strategic initiatives and business plans," the information provided by Lamus was materially false and misleading and he omitted to disclose all material information in connection with the sale of the securities.

134.   Such misrepresentations and omissions included that Enchante was nearing break-even and that a six to eight percent (6 – 8%) dividend would be expected for 2016.

135.   The foregoing statements were false.  Cash flows were negative and the survival of the company relied upon use of new investors' funds.  Enchante was experiencing heavy financial losses.  No dividend could or would be declared.

136.   In connection with the sale of the securities to Mateu, Lamus relied upon a document entitled Investor Questions, July 10, 2015.[24]  The disclosures contained in the document were materially false and misleading and/or the document contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

A. Enchante's Colombia operations were generating about two thousand dollars ($2,000.00) per month profit based upon ten thousand dollars ($10,000.00) per month revenue.

B. Second quarter 2015 revenue for Enchante's Colombia operations was forty-eight thousand dollars ($48,000.00).

C. Eight hundred thousand dollars ($800,000.00) cash was invested into Enchante and two hundred eighty thousand dollars ($280,000.00) in loans was received.

D. The investment offering, including Mateu's funds, would be used for product purchases ($120,000.00), a cash cushion until break-even ($60,000.00) was achieved by the company, and marketing and other

---

[24] A copy of the Investor Questions Memorandum is attached as Exhibit "A."

expenses ($20,000.00). More particularly, as provided in the "Appendix –
Full Use of Proceeds", the use of funds included product inventory, salon
opening acceleration, state / geographic expansion, hiring of a trade
marketing and logistics person, investment into the La Biosthetique salon /
academy, and marketing investment into advertising, sampling, and testing.

137.   The foregoing statements were false. Enchante's Colombia
operations were not operating at a profit. The company did not have legitimate
sales in Colombia of forty-eight thousand dollars ($48,000.00) in Q2, 2015. The
amount of investment into Enchante was grossly overstated. The proceeds from
the sale of securities to Mateu were not applied in accordance with the specified
allocations.

138.   Concurrently with the distribution of the July 10, 2015 Investor
Questions, Lamus emailed financial statements purporting to present the financial
state of affairs of Enchante.[25] The disclosures contained in the documents were
materially false and misleading and/or the documents contained forecasts and
assumptions which lacked any reasonable basis in fact. Such misrepresentations
and omissions included that:

---

[25] Lamus Email Communication, July 8, 2015. Exhibit "D."

A. The Colombia business operation segment had first quarter 2015 revenue of forty-eight thousand dollars ($48,000.00) and an after-tax profit of twelve thousand two hundred fifty-eight dollars ($12,258.00).

B. The Colombia business operation segment had second quarter 2015 revenue of seventy-two thousand dollars ($72,000.00) and an after-tax profit of twenty-five thousand one hundred thirty-eight dollars ($25,138.00).

C. The Colombia business operation segment could reasonably expect third quarter 2015 revenue of one hundred thousand dollars ($100,000.00) and an after-tax profit of twenty-nine thousand eight hundred fifty-nine dollars ($29,859.00).

D. The Colombia business operation segment could reasonably expect fourth quarter 2015 revenue of ninety-six thousand dollars ($96,000.00) and an after-tax profit of twenty-eight thousand two hundred ninety-nine dollars ($28,299.00).

E. The U.S. operation segment had second quarter 2015 revenue of one hundred twenty-three thousand three hundred thirty-three dollars ($123,333).

F. The U.S. business operation segment could reasonably expect third quarter 2015 revenue of one hundred forty-five thousand one hundred nine dollars ($145,109.00).

G. The U.S. business operation segment could reasonably expect fourth quarter 2015 revenue of one hundred ninety-two thousand five hundred thirteen dollars ($192,513.00) and thereby approximately lead to break-even by the fourth quarter of 2015.

139.   The foregoing statements were false.  Upon information and belief, including that information provided by former Director Gustavo Souss,[26] neither the Colombia nor U.S. operations of Enchante had ever reached a point of profitability.  The revenue disclosures were grossly overstated for the relevant time periods and the forecasted projections unreasonable.

140.   In soliciting the August 2015 sale to Mateu, Lamus omitted to disclose the following material information:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had either poor or nonexistent credit extension policies. This led to salesmen opening new accounts and selling products to collect commissions without due regard of the clients' ability to pay.

---

[26] January 8, 2018 Resignation Letter of Gusavo Souss. Exhibit "B."

C. Enchante had mounting and unpaid liabilities, including those for

unpaid taxes in Colombia as well as to its supplier, La Biosthetique.[27]

D. Enchante had never reached a point of profitability.  It was therefore

unreasonable to expect any substantial returns or dividends in the

foreseeable future.

141.   Lamus was aware of the poor financial performance of Enchante at

the time of sale, or were severely reckless in not knowing, but failed to disclose the

particular risk factors to Mateu as well as those negative events that had already

materialized by August of 2015.

142.   Had Lamus made full and accurate disclosure at the time of the sale of

the securities, Mateu would not have invested into the company.  Mateu's reliance

was also reasonable.  Lamus was the chief executive officer and a director and

therefore had access to the books and records of Enchante.

143.   The untrue statements and omissions of material fact were the

proximate cause of Mateu's loss.  Due to the poor financial state of the company,

Enchante failed within two (2) years of Mateu's investment.

144.   This cause of action is brought within the statute of limitations period

set forth under Fla. Stat. §95.11(4)(e) because it was filed within two (2) years of

---

[27] La Biosthetique Notice of Termination, December 2017. Exhibit "C."

the time that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence, and within five (5) years of the date of violation.  Mateu discovered the facts surrounding Defendants' misrepresentations and omissions on or after October of 2016.

## COUNT VI
## FRAUD IN CONNECTION WITH THE SALE OF A SECURITY
### (Fla. Stat. §517.301)
(Mateu vs. All Defendants)

145.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

146.   Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

147.   Lamus, Rey, and Enchante violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material

fact and omissions to state material facts, and (iii) engaged in a transaction,

practice, or course of business which operated as a fraud or deceit upon Mateu.

148.   In December of 2015, Lamus and Rey solicited Mateu for an

additional investment of six thousand dollars ($6,000) into Enchante.[28]

149.   Enchante's securities were not covered by a state or federal

registration statement.

150.   Mrs. Rey, as the seller of the unregistered securities of Enchante, had

an affirmative duty to provide information disclosure to Mateu, including material

information regarding Enchante's business and operations.

151.   Mrs. Rey failed to provide any substantive disclosure to Mateu.  She

instead relied upon those disclosures made by her husband, but, as provided herein,

such disclosures were false and materially misleading.

152.   Mrs. Rey failed to correct the misstatements and/or provide

responsive information to the omissions her husband made in August of 2015.  In

particular, Mrs. Rey failed to disclose that:

> A. Enchante failed to properly book and account for sales as a result of
>
> one or more consignment agreements.  These consignment agreement(s)
>
> were structured whereby Enchante would provide its inventory to be held in

---

[28] A copy of the securities purchase agreement appears in the Docket under number 20-2.

retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.

C. Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

D. The financial information provided by Mr. Lamus in July to August of 2015 was false and materially misleading, including grossly overstated revenue and profitability disclosures as well as unsupportable forecasts.

153.  Mr. Lamus was involved in the December 2015 securities sale to Mateu.  Although his wife, Mrs. Rey, was the owner and seller of the unregistered securities, Mr. Lamus organized the sale to Mateu.

154.  In or about December 2015, Mr. Lamus informed Mateu that another shareholder, Pablo Toloso, was in need of selling his shares due to a change in immigration status.  He thereby solicited Mateu for the purchase of the securities and then sent Mrs. Rey to close the transaction directly and collect the proceeds from sale.

155.  Lamus and Rey were aware of the poor financial performance of Enchante at the time of sale, or were severely reckless in not knowing, but failed to

disclose the particular risk factors to Mateu as well as those negative events that had already materialized by December of 2015.

156.   Had Lamus and Rey made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company. Mateu's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.  Rey is Lamus' wife and was the seller of the unregistered securities.

157.   The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within two (2) years of Mateu's investment.

158.   This cause of action is brought within the statute of limitations period set forth under Fla. Stat. §95.11(4)(e) because it was filed within two (2) years of the time that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence, and within five (5) years of the date of violation.  Mateu discovered the facts surrounding Defendants' misrepresentations and omissions on or after October of 2016.

## COUNT VII
## FRAUD IN CONNECTION WITH THE SALE OF A SECURITY
### (Fla. Stat. §517.301)
(Fernau vs. Lamus and Enchante)

159.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

160.   Fla. Stat. §517.301 provides that it is unlawful and a violation of Chapter 517 of the Florida Code for a person, in connection with the offer, sale, or purchase of any investment or security (i) to employ any device, scheme, or artifice to defraud, (ii) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (iii) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

161.   Lamus and Enchante violated §517.301 because they, in connection with the sale of a security, (i) employed a device, scheme, or artifice to defraud, (ii) obtained money or property by means of untrue statements of material fact and omissions to state material facts, and (iii) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Fernau.

162.   Between February and March of 2017, Lamus solicited Fernau for the investment of sixty-two thousand five hundred dollars ($62,500.00) into Enchante.[29]

163.   Much the same as Mateu, the Fernau investment was solicited and sold with material misstatements and omissions of material fact.  Lamus was aware

---

[29] A copy of the March 29, 2017 subscription agreement appears under Docket Number 20-3.

of the poor and deteriorating financial performance of Enchante and substantial, unpaid liabilities, but failed to disclose this information at the time of the sale of the securities.

164.   Although the subscription agreement states that Fernau had been provided with "access to all information, including financial statements and other financial information of the Company, and has been afforded an opportunity to ask questions of and receive answers from the Company," the information he had received from Lamus, on behalf of Enchante, was false and materially misleading.

165.   These misrepresentations included:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.

B. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

C. Lamus represented that Enchante, at the time of sale, had a valuation of one million two hundred fifty thousand dollars ($1,250,000.00) or more.

166.   The foregoing statements were false and/or materially misleading. Enchante was incurring substantial losses when the sale of the securities occurred. Enchante had unpaid and substantial liabilities, including unpaid taxes in Colombia, unpaid accounts payable and royalties to Enchante's primary supplier, La Biosthetique, and amounts claimed by Lamus himself for back due salaries and expenses.

167.   The consignment arrangements resulted in inflated revenue because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to their sale to the end-user or customer.

168.   The business valuation was grossly inflated and did not rely upon reasonable valuation assumptions.

169.   Lamus knew, at the time of the sale of the securities, that the company engaged in questionable sales practices.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

170.   In addition, Lamus omitted to disclose material information in connection with the sale of securities to Fernau.  Such omissions included:

A. Lamus failed to disclose the material liabilities Enchante had when he solicited and sold the investment, including unpaid taxes in Colombia and royalties past due to Enchante's supplier, La Biosthetique.

B.  Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

C.  Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Enchante had either poor or nonexistent credit extension policies, leading to salesmen opening new accounts and selling products, thereby collecting commissions without due regard of the clients' ability to pay.

D.  Lamus failed to disclose that on or about October 17, 2016, Fernando Mateu and his wife requested rescission of their 2015 securities purchases.

E.  Lamus failed to disclose that in response to the October 17, 2016 request for rescission by Mateu, Lamus disclosed the lack of liquidity and insolvency of Enchante and sought to pay back Mateu's investment with the use of new investors' funds.

171.   In soliciting the investment to Fernau, Lamus provided, in a March 1, 2017 email communication,[30] that:

A.  Enchante had a one million two hundred fifty thousand dollar ($1,250,000.00) valuation.

---

[30] A copy of the March 1, 2017 email communication appears under Docket Number 106-3.

B.  At least fifty percent (50%) of the initial investment by Fernau would remain in the company.

172.   The foregoing statements were false and materially misleading when made.  This valuation was grossly inflated and did not rely upon reasonable assumptions.  Fifty percent (50%) of the initial investment did not remain within the company, but was quickly spent, including for payment of such items as Lamus' claims for past due personal salary and expenses.

173.   By March of 2017, Enchante was already on the verge of collapse. Not only were the foregoing statements false and materially misleading when made, but by 2017, it was known that such statements had no reasonable basis in fact.  Enchante had never reached a point of profitability for which dividends could be paid.  The use of proceeds did not follow the representations made.

174.   By 2017, Enchante had nominal value because of its mounting liabilities.  Lamus was personally aware of the impossibility of reaching his prior sales and growth forecasts, yet continued to make such unsupportable representations to Fernau.

175.   Had Lamus made full and accurate disclosure at the time of the sale of the securities, Fernau would not have invested into the company.  Fernau's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

176.   The untrue statements and omissions of material fact were the proximate cause of Fernau's loss.  Due to the poor financial state of the company, Enchante failed less than one year after Fernau's investment.  At the time of Fernau's investment, Enchante was already on the verge of collapse due to its failure to develop revenue channels and substantial, unpaid liabilities.

## COUNT VIII
## FRAUD IN CONNECTION WITH THE SALE OF A SECURITY
### (§10(b) of the Exchange Act, 15 U.S.C. §78j, and Rule 10b-5, 17 C.F.R. §240.10b-5)
(Mateu v. Lamus and Enchante)

177.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

178.   The investment contracts with Mateu were entered into and made in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j, and promulgated Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

179.   §10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

180.   Lamus and Enchante violated §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder and used the means and instrumentality of interstate commerce, including the mails, in the consummation of their fraud.

181.   In August of 2015, Lamus solicited Mateu for the investment of one hundred thousand dollars ($100,000.00) into Enchante.[31]  The investment was solicited with material misstatements and omissions in violation of both state and federal securities laws.

182.   The misrepresentations and omissions occurred in or about July 8, 2015 to August 5, 2015.  Lamus organized two in-person meetings in Miami for the purpose of solicitation and sale of the investment to Mateu.

183.   In soliciting the investment to Mateu, Lamus relied upon the means and instrumentality of interstate commerce, including wire communications. Communications were made by electronic mail, telephone, and/or electronic instant messaging in our about July 8, 2015 to August 5, 2015 to promote Enchante and the sale of the investment to Mateu.

184.   Although the subscription agreement states that Mateu had been provided with "an opportunity to discuss with management of the Company and to ask questions about the Company's current and prospective financial condition,

---

[31] A copy of the subscription agreement for securities appears as Docket Number 20-1.

assets and liabilities, business operations, sales, sales prospects, strategic initiatives and business plans," the information provided by Lamus was materially false and misleading and he omitted to disclose all material information in connection with the sale of the securities.

185.   Such misrepresentations and omissions included that Enchante was nearing break-even and that a six to eight percent (6 – 8%) dividend would be expected for 2016.

186.   The foregoing statements were false.  Cash flows were negative and the survival of the company relied upon use of new investors' funds.  Enchante was experiencing heavy financial losses.  No dividend could or would be declared.

187.   In connection with the sale of the securities to Mateu, Lamus relied upon a document entitled Investor Questions, July 10, 2015.[32]  The disclosures contained in the document were materially false and misleading and/or the document contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

A. Enchante's Colombia operations were generating about two thousand dollars ($2,000.00) per month profit based upon ten thousand dollars ($10,000.00) per month revenue.

---

[32] A copy of the Investor Questions Memorandum is attached as Exhibit "A."

B.  Second quarter 2015 revenue for Enchante's Colombia operations was forty-eight thousand dollars ($48,000.00).

C.  Eight hundred thousand dollars ($800,000.00) cash was invested into Enchante and two hundred eighty thousand dollars ($280,000.00) in loans was received.

D.  The investment offering, including Mateu's funds, would be used for product purchases ($120,000.00), a cash cushion until break-even ($60,000.00) was achieved by the company, and marketing and other expenses ($20,000.00).  More particularly, as provided in the "Appendix – Full Use of Proceeds", the use of funds included product inventory, salon opening acceleration, state / geographic expansion, hiring of a trade marketing and logistics person, investment into the La Biosthetique salon / academy, and marketing investment into advertising, sampling, and testing.

188.   The foregoing statements were false.  Enchante's Colombia operations were not operating at a profit.  The company did not have legitimate sales in Colombia of forty-eight thousand dollars ($48,000.00) in Q2, 2015.  The amount of investment into Enchante was grossly overstated.  The proceeds from the sale of securities to Mateu were not applied in accordance with the specified allocations.

189.   Concurrently with the distribution of the July 10, 2015 Investor Questions, Lamus emailed financial statements purporting to present the financial state of affairs of Enchante.[33]  The disclosures contained in the documents were materially false and misleading and/or the documents contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

A. The Colombia business operation segment had first quarter 2015 revenue of forty-eight thousand dollars ($48,000.00) and an after-tax profit of twelve thousand two hundred fifty-eight dollars ($12,258.00).

B. The Colombia business operation segment had second quarter 2015 revenue of seventy-two thousand dollars ($72,000.00) and an after-tax profit of twenty-five thousand one hundred thirty-eight dollars ($25,138.00).

C. The Colombia business operation segment could reasonably expect third quarter 2015 revenue of one hundred thousand dollars ($100,000.00) and an after-tax profit of twenty-nine thousand eight hundred fifty-nine dollars ($29,859.00).

D. The Colombia business operation segment could reasonably expect fourth quarter 2015 revenue of ninety-six thousand dollars ($96,000.00) and

---

[33] Lamus Email Communication, July 8, 2015. Exhibit "D."

an after-tax profit of twenty-eight thousand two hundred ninety-nine dollars ($28,299.00).

E.  The U.S. operation segment had second quarter 2015 revenue of one hundred twenty-three thousand three hundred thirty-three dollars ($123,333).

F.  The U.S. business operation segment could reasonably expect third quarter 2015 revenue of one hundred forty-five thousand one hundred nine dollars ($145,109.00).

G.  The U.S. business operation segment could reasonably expect fourth quarter 2015 revenue of one hundred ninety-two thousand five hundred thirteen dollars ($192,513.00) and thereby approximately lead to break-even by the fourth quarter of 2015.

190.   The foregoing statements were false.  Upon information and belief, including that information provided by former Director Gustavo Souss,[34] neither the Colombia nor U.S. operations of Enchante had ever reached a point of profitability.  The revenue disclosures were grossly overstated for the relevant time periods and the forecasted projections unreasonable.

191.   In soliciting the August 2015 sale to Mateu, Lamus omitted to disclose the following material information:

---

[34] January 8, 2018 Resignation Letter of Gusavo Souss. Exhibit "B."

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had either poor or nonexistent credit extension policies. This led to salesmen opening new accounts and selling products to collect commissions without due regard of the clients' ability to pay.

C. Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.[35]

D. Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

192.   Had Lamus made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company.  Mateu's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

---

[35] La Biosthetique Notice of Termination, December 2017. Exhibit "C."

193.   The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within two (2) years of Mateu's investment.

194.   Defendants' untrue statements of material fact and omissions to disclose material facts in connection with the sale of the securities to Mateu constitute devices, schemes, and artifices to defraud and constitute acts, practices, or courses of conduct which operated as fraud or deceit within the meaning of §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder.

195.   Defendants acted with scienter in the consummation of their fraudulent scheme.  The omissions and misrepresentations were not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care and misled Mateu.  Lamus was personally aware of the poor financial condition of Enchante as he was the chief executive officer and director and was primarily responsible for the creation and maintenance of the books and records of the company.

196.   This cause of action is brought within the statute of limitations period set forth under 28 U.S.C. §1658 because it was filed within two (2) years of discovery of the facts constituting the violation or five (5) years after such violation.  Mateu discovered the facts surrounding Defendants' misrepresentations and omissions on or after October of 2016.

**COUNT IX**
**FRAUD IN CONNECTION WITH THE SALE OF A SECURITY**
**(§10(b) of the Exchange Act, 15 U.S.C. §78j, and Rule 10b-5, 17 C.F.R.**
**§240.10b-5)**
(Mateu v. All Defendants)

197.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

198.   The investment contracts with Mateu were entered into and made in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j, and promulgated Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

199.   §10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

200.   Lamus, Rey, and Enchante violated §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder and used the means and instrumentality of interstate commerce, including the mails, in or about December of 2015 in the consummation of their fraud.

201.   In December of 2015, Lamus and Rey solicited Mateu for an additional investment of six thousand dollars ($6,000) into Enchante.[36]

202.   Enchante's securities were not covered by a state or federal registration statement.

203.   Mrs. Rey, as the seller of the unregistered securities of Enchante, had an affirmative duty to provide information disclosure to Mateu, including material information regarding Enchante's business and operations.

204.   Mrs. Rey failed to provide any substantive disclosure to Mateu.  She instead relied upon those disclosures made by her husband, but, as provided herein, such disclosures were false and materially misleading.

205.   Mrs. Rey failed to correct the misstatements and/or provide responsive information to the omissions her husband made in August of 2015.  In particular, Mrs. Rey failed to disclose that:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

_____

[36] A copy of the securities purchase agreement appears in the Docket under number 20-2.

B.  Enchante had mounting and unpaid liabilities, including those for

unpaid taxes in Colombia as well as to its supplier, La Biosthetique.

C.  Enchante had never reached a point of profitability.  It was therefore

unreasonable to expect any substantial returns or dividends in the

foreseeable future.

D.  The financial information provided by Mr. Lamus in July to August of

2015 was false and materially misleading, including grossly overstated

revenue and profitability disclosures as well as unsupportable forecasts.

206.  Mr. Lamus was involved in the December 2015 securities sale to

Mateu.  Although his wife, Mrs. Rey, was the owner and seller of the unregistered

securities, Mr. Lamus organized the sale to Mateu.

207.  In or about December 2015, Mr. Lamus informed Mateu that another

shareholder, Pablo Toloso, was in need of selling his shares due to a change in

immigration status.  He thereby solicited Mateu for the purchase of the securities

and then sent Mrs. Rey to close the transaction directly and collect the proceeds

from sale.

208.  Lamus and Rey were aware of the poor financial performance of

Enchante at the time of sale, or were severely reckless in not knowing, but failed to

disclose the particular risk factors to Mateu as well as those negative events that

had already materialized by December of 2015.

209.   Had Lamus and Rey made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company. Mateu's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.  Rey is Lamus' wife and was the seller of the unregistered securities.

210.   The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within two (2) years of Mateu's investment.

211.   Defendants' untrue statements of material fact and omissions to disclose material facts in connection with the sale of the securities to Mateu constitute devices, schemes, and artifices to defraud and constitute acts, practices, or courses of conduct which operated as fraud or deceit within the meaning of §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder.

212.   Defendants acted with scienter in the consummation of their fraudulent scheme.  The omissions and misrepresentations were not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care and misled Mateu.  Lamus was personally aware of the poor financial condition of Enchante as he was the chief executive officer and director and was primarily responsible for the creation and maintenance of the books and records of the company.  Mrs. Rey was the seller of the unregistered securities.

Further, Mateu's funds were immediately used to pay such expenses as Lamus' own personal compensation, lavish travel expenses, and meals and entertainment.

213.   This cause of action is brought within the statute of limitations period set forth under 28 U.S.C. §1658 because it was filed within two (2) years of discovery of the facts constituting the violation or five (5) years after such violation.  Mateu discovered the facts surrounding Defendants' misrepresentations and omissions on or after October of 2016.

## COUNT X
## FRAUD IN CONNECTION WITH THE SALE OF A SECURITY
### (§10(b) of the Exchange Act, 15 U.S.C. §78j, and Rule 10b-5, 17 C.F.R. §240.10b-5)
(Fernau vs. Lamus and Enchante)

214.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

215.   The investment contracts with Fernau were entered into and made in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j, and promulgated Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

216.   §10(b) of the Exchange Act provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange to use or employ, in connection with the purchase or sale of any security

any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.

217.   Lamus and Enchante violated §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder and used the means and instrumentality of interstate commerce, including the mails, in the consummation of their fraud.  The following are some of the wire communications made by Lamus in connection with the sale of the securities to Fernau:

A. Email communication on February 28, 2017, from Lamus to Fernau, containing a pro forma income statement for 2017.[37]

B. Email communication on March 1, 2017, from Lamus to Fernau.[38]

C. Email communication on March 3, 2017, distributing an Investment Memo Executive Summary.[39]

D. Email communication on March 6, 2017, from Lamus to Fernau.[40]

---

[37] A copy of the communication appears under Docket Number 106-5.

[38] A copy of the communication appears under Docket Number 106-3.

[39] A copy of the Investment Memo appears under Docket Number 106-1.

[40] A copy of the communication appears under Docket Number 106-4.

218.   Between February and March of 2017, Lamus solicited Fernau for the investment of sixty-two thousand five hundred dollars ($62,500.00) into Enchante.[41]

219.   Much the same as Mateu, the Fernau investment was solicited and sold with material misstatements and omissions of material fact.  Lamus was aware of the poor and deteriorating financial performance of Enchante and substantial, unpaid liabilities, but failed to disclose this information at the time of the sale of the securities.

220.   Although the subscription agreement states that Fernau had been provided with "access to all information, including financial statements and other financial information of the Company, and has been afforded an opportunity to ask questions of and receive answers from the Company," the information he had received from Lamus, on behalf of Enchante, was false and materially misleading.

221.   These misrepresentations included:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.

---

[41] A copy of the March 29, 2017 subscription agreement appears under Docket Number 20-3.

B.  Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

C.  Lamus represented that Enchante, at the time of sale, had a valuation of one million two hundred fifty thousand dollars ($1,250,000.00) or more.

222.   The foregoing statements were false and/or materially misleading. Enchante was incurring substantial losses when the sale of the securities occurred. Enchante had unpaid and substantial liabilities, including unpaid taxes in Colombia, unpaid accounts payable and royalties to Enchante's primary supplier, La Biosthetique, and amounts claimed by Lamus himself for back due salaries and expenses.

223.   The consignment arrangements resulted in inflated revenue because sales were recognized when product was shipped, but retail stores had no obligation to pay for the products prior to their sale to the end-user or customer.

224.   The business valuation was grossly inflated and did not rely upon reasonable valuation assumptions.

225.   Lamus knew, at the time of the sale of the securities, that the company engaged in questionable sales practices.  These questionable sales practices

involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

226.   In addition, Lamus omitted to disclose material information in connection with the sale of securities to Fernau.  Such omissions included:

A. Lamus failed to disclose the material liabilities Enchante had when he solicited and sold the investment, including unpaid taxes in Colombia and royalties past due to Enchante's supplier, La Biosthetique.

B. Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

C. Lamus failed to disclose problems in Enchante's sales and distribution structure.  In particular, Enchante had either poor or nonexistent credit extension policies, leading to salesmen opening new accounts and selling products, thereby collecting commissions without due regard of the clients' ability to pay.

D. Lamus failed to disclose that on or about October 17, 2016, Fernando Mateu and his wife requested rescission of their 2015 securities purchases.

E. Lamus failed to disclose that in response to the October 17, 2016 request for rescission by Mateu, Lamus disclosed the lack of liquidity and insolvency of Enchante and sought to pay back Mateu's investment with the use of new investors' funds.

227. In soliciting the investment to Fernau, Lamus provided, in a March 1, 2017 email communication,[42] that:

A. Enchante had a one million two hundred fifty thousand dollar ($1,250,000.00) valuation.

B. At least fifty percent (50%) of the initial investment by Fernau would remain in the company.

228. The foregoing statements were false and materially misleading when made. This valuation was grossly inflated and did not rely upon reasonable assumptions. Fifty percent (50%) of the initial investment did not remain within the company, but was quickly spent, including for payment of such items as Lamus' claims for past due personal salary and expenses.

229. By March of 2017, Enchante was already on the verge of collapse. Not only were the foregoing statements false and materially misleading when made, but by 2017, it was known that such statements had no reasonable basis in fact. Enchante had never reached a point of profitability for which dividends could be paid. The use of proceeds did not follow the representations made.

230. By 2017, Enchante had nominal value because of its mounting liabilities. Lamus was personally aware of the impossibility of reaching his prior

---

[42] A copy of the March 1, 2017 email communication appears under Docket Number 106-3.

sales and growth forecasts, yet continued to make such unsupportable representations to Fernau.

231.   Lamus' untrue statements of material fact and omissions to disclose material facts in connection with the sale of the securities to Fernau constitute devices, schemes, and artifices to defraud and constitute acts, practices, or courses of conduct which operated as fraud or deceit within the meaning of §10(b) of the Exchange Act and promulgated Rule 10b-5 thereunder.

232.   Had Lamus made full and accurate disclosure at the time of the sale of the securities, Fernau would not have invested into the company.  Fernau's reliance was also reasonable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

233.   The untrue statements and omissions of material fact were the proximate cause of Fernau's loss.  Due to the poor financial state of the company, Enchante failed less than one year after Fernau's investment.  At the time of Fernau's investment, Enchante was already on the verge of collapse due to its failure to develop revenue channels and substantial, unpaid liabilities.

234.   Lamus and Enchante acted with scienter in the consummation of their fraudulent scheme.  The omissions and misrepresentations were not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care and misled Fernau.  Lamus was personally aware of the poor

financial condition of Enchante as he was the chief executive officer and director and was primarily responsible for the creation and maintenance of the books and records of the company.

## COUNT XI
## COMMON LAW FRAUD
(Mateu vs. Lamus and Enchante)

235.    The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

236.    Defendants committed common law fraud because they have (i) made false statements of fact, (ii) made for the purpose of inducing Mateu to act, (iii) Mateu justifiably relied upon the false statements, and (iv) Mateu has suffered damages as a result.

237.    In August of 2015, Lamus solicited Mateu for the investment of one hundred thousand dollars ($100,000.00) into Enchante.[43]  The investment was solicited with material misstatements and omissions in violation of both state and federal securities laws.

238.    The misrepresentations and omissions occurred in or about July 8, 2015 to August 5, 2015.  Lamus organized two in-person meetings in Miami for the purpose of solicitation and sale of the investment to Mateu.

_____

[43] A copy of the subscription agreement for securities appears as Docket Number 20-1.

239.   In soliciting the investment to Mateu, Lamus relied upon the means and instrumentality of interstate commerce, including wire communications. Communications were made by electronic mail, telephone, and/or electronic instant messaging in or about July 8, 2015 to August 5, 2015 to promote Enchante and the sale of the investment to Mateu.

240.   Although the subscription agreement states that Mateu had been provided with "an opportunity to discuss with management of the Company and to ask questions about the Company's current and prospective financial condition, assets and liabilities, business operations, sales, sales prospects, strategic initiatives and business plans," the information provided by Lamus was materially false and misleading and he omitted to disclose all material information in connection with the sale of the securities.

241.   Such misrepresentations and omissions included that Enchante was nearing break-even and that a six to eight percent (6 – 8%) dividend would be expected for 2016.

242.   The foregoing statements were false.  Cash flows were negative and the survival of the company relied upon use of new investors' funds.  Enchante was experiencing heavy financial losses.  No dividend could or would be declared.

243.   In connection with the sale of the securities to Mateu, Lamus relied upon a document entitled Investor Questions, July 10, 2015.[44]  The disclosures contained in the document were materially false and misleading and/or the document contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

A. Enchante's Colombia operations were generating about two thousand dollars ($2,000.00) per month profit based upon ten thousand dollars ($10,000.00) per month revenue.

B. Second quarter 2015 revenue for Enchante's Colombia operations was forty-eight thousand dollars ($48,000.00).

C. Eight hundred thousand dollars ($800,000.00) cash was invested into Enchante and two hundred eighty thousand dollars ($280,000.00) in loans was received.

D. The investment offering, including Mateu's funds, would be used for product purchases ($120,000.00), a cash cushion until break-even ($60,000.00) was achieved by the company, and marketing and other expenses ($20,000.00).  More particularly, as provided in the "Appendix – Full Use of Proceeds", the use of funds included product inventory, salon opening acceleration, state / geographic expansion, hiring of a trade

---

[44] A copy of the Investor Questions Memorandum is attached as <u>Exhibit "A."</u>

marketing and logistics person, investment into the La Biosthetique salon / academy, and marketing investment into advertising, sampling, and testing.

244.   The foregoing statements were false.  Enchante's Colombia operations were not operating at a profit.  The company did not have legitimate sales in Colombia of forty-eight thousand dollars ($48,000.00) in Q2, 2015.  The amount of investment into Enchante was grossly overstated.  The proceeds from the sale of securities to Mateu were not applied in accordance with the specified allocations.

245.   Concurrently with the distribution of the July 10, 2015 Investor Questions, Lamus emailed financial statements purporting to present the financial state of affairs of Enchante.[45]  The disclosures contained in the documents were materially false and misleading and/or the documents contained forecasts and assumptions which lacked any reasonable basis in fact.  Such misrepresentations and omissions included that:

A. The Colombia business operation segment had first quarter 2015 revenue of forty-eight thousand dollars ($48,000.00) and an after-tax profit of twelve thousand two hundred fifty-eight dollars ($12,258.00).

---

[45] Lamus Email Communication, July 8, 2015. Exhibit "D."

B.  The Colombia business operation segment had second quarter 2015 revenue of seventy-two thousand dollars ($72,000.00) and an after-tax profit of twenty-five thousand one hundred thirty-eight dollars ($25,138.00).

C.  The Colombia business operation segment could reasonably expect third quarter 2015 revenue of one hundred thousand dollars ($100,000.00) and an after-tax profit of twenty-nine thousand eight hundred fifty-nine dollars ($29,859.00).

D.  The Colombia business operation segment could reasonably expect fourth quarter 2015 revenue of ninety-six thousand dollars ($96,000.00) and an after-tax profit of twenty-eight thousand two hundred ninety-nine dollars ($28,299.00).

E.  The U.S. operation segment had second quarter 2015 revenue of one hundred twenty-three thousand three hundred thirty-three dollars ($123,333).

F.  The U.S. business operation segment could reasonably expect third quarter 2015 revenue of one hundred forty-five thousand one hundred nine dollars ($145,109.00).

G. The U.S. business operation segment could reasonably expect fourth quarter 2015 revenue of one hundred ninety-two thousand five hundred thirteen dollars ($192,513.00) and thereby approximately lead to break-even by the fourth quarter of 2015.

246.   The foregoing statements were false.  Upon information and belief, including that information provided by former Director Gustavo Souss,[46] neither the Colombia nor U.S. operations of Enchante had ever reached a point of profitability.  The revenue disclosures were grossly overstated for the relevant time periods and the forecasted projections unreasonable.

247.   In soliciting the August 2015 sale to Mateu, Lamus omitted to disclose the following material information:

A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had either poor or nonexistent credit extension policies.  This led to salesmen opening new accounts and selling products to collect commissions without due regard of the clients' ability to pay.

C. Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.[47]

---

[46] January 8, 2018 Resignation Letter of Gusavo Souss. Exhibit "B."

[47] La Biosthetique Notice of Termination, December 2017. Exhibit "C."

D. Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

248.   Lamus was aware of the poor financial performance of Enchante at the time of sale, or were severely reckless in not knowing, but failed to disclose the particular risk factors to Mateu as well as those negative events that had already materialized by August of 2015.

249.   Had Lamus made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company.  Mateu's reliance was also justifiable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

250.   The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within two (2) years of Mateu's investment.

### COUNT XII
### COMMON LAW FRAUD
(Mateu vs. All Defendants)

251.   The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

252.   Defendants committed common law fraud because they have (i) made false statements of fact, (ii) made for the purpose of inducing Mateu to act, (iii)

Mateu justifiably relied upon the false statements, and (iv) Mateu has suffered damages as a result.

253.   In December of 2015, Lamus and Rey solicited Mateu for an additional investment of six thousand dollars ($6,000) into Enchante.[48]

254.   Enchante's securities were not covered by a state or federal registration statement.

255.   Mrs. Rey, as the seller of the unregistered securities of Enchante, had an affirmative duty to provide information disclosure to Mateu, including material information regarding Enchante's business and operations.

256.   Mrs. Rey failed to provide any substantive disclosure to Mateu.  She instead relied upon those disclosures made by her husband, but, as provided herein, such disclosures were false and materially misleading.

257.   Mrs. Rey failed to correct the misstatements and/or provide responsive information to the omissions her husband made in August of 2015.  In particular, Mrs. Rey failed to disclose that:

   A. Enchante failed to properly book and account for sales as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in

_____

[48] A copy of the securities purchase agreement appears in the Docket under number 20-2.

retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

B. Enchante had mounting and unpaid liabilities, including those for unpaid taxes in Colombia as well as to its supplier, La Biosthetique.

C. Enchante had never reached a point of profitability.  It was therefore unreasonable to expect any substantial returns or dividends in the foreseeable future.

D. The financial information provided by Mr. Lamus in July to August of 2015 was false and materially misleading, including grossly overstated revenue and profitability disclosures as well as unsupportable forecasts.

258.  Mr. Lamus was involved in the December 2015 securities sale to Mateu.  Although his wife, Mrs. Rey, was the owner and seller of the unregistered securities, Mr. Lamus organized the sale to Mateu.

259.  In or about December 2015, Mr. Lamus informed Mateu that another shareholder, Pablo Toloso, was in need of selling his shares due to a change in immigration status.  He thereby solicited Mateu for the purchase of the securities and then sent Mrs. Rey to close the transaction directly and collect the proceeds from sale.

260.  Lamus and Rey were aware of the poor financial performance of Enchante at the time of sale, or were severely reckless in not knowing, but failed to

disclose the particular risk factors to Mateu as well as those negative events that had already materialized by December of 2015.

261.  Had Lamus and Rey made full and accurate disclosure at the time of the sale of the securities, Mateu would not have invested into the company. Mateu's reliance was also justifiable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.  Rey is Lamus' wife and was the seller of the unregistered securities.

262.  The untrue statements and omissions of material fact were the proximate cause of Mateu's loss.  Due to the poor financial state of the company, Enchante failed within two (2) years of Mateu's investment.

## COUNT XIII
## COMMON LAW FRAUD
(Fernau vs. Lamus and Enchante)

263.  The allegations contained in paragraphs 1 through 41 are hereby incorporated by reference as if such were restated in full.

264.  Lamus and Enchante committed common law fraud because they have (i) made false statements of fact, (ii) made for the purpose of inducing Fernau to act, (iii) Fernau justifiably relied upon the false statements, and (iv) Fernau has suffered damages as a result.

265.  Between February and March of 2017, Lamus solicited Fernau for the investment of sixty-two thousand five hundred dollars ($62,500.00) into Enchante.

266.  Much the same as Mateu, the Fernau investment was solicited and sold with material misstatements and omissions of material fact.  Lamus was aware of the poor and deteriorating financial performance of Enchante and substantial, unpaid liabilities, but failed to disclose this information at the time of the sale of the securities.

267.  Although the subscription agreement states that Fernau had been provided with "access to all information, including financial statements and other financial information of the Company, and has been afforded an opportunity to ask questions of and receive answers from the Company," the information he had received from Lamus, on behalf of Enchante, was false and materially misleading. These misrepresentations and omissions included:

A. Lamus represented that Enchante was at a break-even point financially whereby revenues were approximately equal to expenses being incurred.

B. Lamus failed to disclose material liabilities Enchante had when he solicited and sold the investment.

C. Lamus misrepresented the existence of sales of Enchante as a result of one or more consignment agreements.  These consignment agreement(s) were structured whereby Enchante would provide its inventory to be held in

retail stores, but such were neither sales nor should have been counted as revenue when the product was delivered.

D. Lamus represented that Enchante, at the time of sale, had a valuation of one million two hundred fifty thousand dollars ($1,250,000.00) or more.

E. Lamus failed to disclose that the financial statements of Enchante did not comport with Generally Accepted Accounting Principles (GAAP).

F. Lamus failed to disclose problems in Enchante's sales and distribution structure.

G. Lamus failed to disclose that on or about October 17, 2016, Fernando Mateu and his wife requested rescission of their 2015 securities purchases.

H. Lamus failed to disclose that in response to the October 17, 2016 request for rescission by Mateu, Lamus disclosed the lack of liquidity and insolvency of Enchante, but sought to operate a ponzi scheme and thereby payback Mateu's investment with the use of new investors' funds.

268.  The foregoing statements were false and/or materially misleading. Enchante was incurring substantial losses when the sale of the securities occurred. Enchante had unpaid and substantial liabilities, including unpaid taxes in Colombia and unpaid accounts payable and royalties to Enchante's primary supplier, La Biothetique.  The consignment arrangements resulted in inflated sales because sales were recognized when product was shipped, but retail stores had no

obligation to pay for the products prior to their sale to the end-user or customer. The business valuation was grossly inflated and did not rely upon any recognized valuation methodology or reasonable valuation assumptions.  Lamus knew, at the time of the sale of the securities, that the company engaged in questionable sales practices.  These questionable sales practices involved the sale of goods on credit to retailers which were either a poor credit risk or known to be uncollectible.

269.  In soliciting the investment to Fernau, Lamus provided, in a March 1, 2017 email communication, that:

A. Enchante had a one million two hundred fifty thousand dollar ($1,250,000.00) valuation.

B. At least fifty percent (50%) of the initial investment by Fernau would remain in the company.

270.  The foregoing statements were false and materially misleading when made.  This valuation was grossly inflated and did not rely upon any recognized valuation methodology or reasonable assumptions.  Fifty percent (50%) of the initial investment did not remain within the company, but was quickly spent, including for payment of such items as Lamus' claims for past due personal salary and expenses.

271.  By 2017, Enchante had nominal value because of its mounting liabilities.  Lamus was personally aware of the impossibility of reaching his prior

sales and growth forecasts, yet continued to make such unsupportable representations to Fernau.

272.   Had Lamus made full and accurate disclosure at the time of the sale of the securities, Fernau would not have invested into the company.  Fernau's reliance was also justifiable.  Lamus was the chief executive officer and a director and therefore had access to the books and records of Enchante.

273.   The untrue statements and omissions of material fact were the proximate cause of Fernau's loss.  Due to the poor financial state of the company, Enchante failed less than one year after Fernau's investment.

WHEREFORE, Plaintiffs prays for a judgment in their favor and against Defendants in the amount of one hundred sixty-eight thousand five hundred dollars ($168,500), plus prejudgment interest from the date of sale, and an award of costs and attorneys' fees.

This 14th day of November, 2019.

/s/ Michael Stegawski
Michael Stegawski
Fla Bar No. 51589

Convergent Litigation Associates
1395 Brickell Ave, Suite 800
Miami, FL 33131
Tel: (800) 750-9860 ext. 1
Fax: (800) 531-3243
michael@cla-law.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

JULIAN FERNAU, FERNANDO
MATEU, AND MARIA DOLORES
DE LUCAS,

     *Plaintiffs*,

 v.

ENCHANTE BEAUTY PRODUCTS,
INC., RAUL LAMUS, AND MARIA
FERNANDA REY,

     *Defendants*.

CASE NO. 1:18-cv-20866-RNS

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2019, I electronically filed the within and foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                     /s/ Michael Stegawski
                     Michael Stegawski, Esq.

## <u>SERVICE LIST</u>

*Fernau, et. al, v. Enchante Beauty Products, Inc., et. al.*
Case No. 1:18-cv-20866-RNS
United States District Court, Southern District of Florida

| | |
|---|---|
| Brodsky Fotiu-Wojtowicz, PLLC<br>Alaina Fotiu-Wojtowicz<br>200 SE 1st Street<br>Suite 400<br>Miami, FL 33131<br>Tel: (305) 503-5054<br>Fax: (786) 749-7644<br>Email: alaina@bfwlegal.com<br>        docketing@bfwlegal.com<br><br>*Attorney for Raul Lamus and Maria*<br>*Fernanda Rey*<br><br>(via CM/ECF) | Convergent Litigation Associates<br>Michael Stegawski<br>1395 Brickell Avenue<br>Suite 800<br>Miami, FL 33131<br>Tel: (800) 750-9860 ext. 1<br>Fax: (800) 531-3243<br>Email: michael@cla-law.com<br><br>*Attorney for Plaintiffs*<br><br>(via CM/ECF) |

Stephanie Anne Casey
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134
Tel: (305) 476-7400
Fax: (305) 476-7444
Email: scasey@colson.com

*Attorney for Enchante Beauty Products, Inc.*

(via CM/ECF)

# **VERIFICATION**

We, Fernando Mateu and Maria Dolores De Lucas, Plaintiffs in the above-styled action, hereby declare, under penalty of perjury and pursuant to 28 U.S.C. §1746, that we have read the foregoing Verified Amended Complaint and that the facts stated therein are true and correct.

_____
Fernando Mateu

_____
Maria Dolores de Lucas

## **VERIFICATION**

I, Julian Fernau, Plaintiff in the above-styled action, hereby declare, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. §1746, that I have read the foregoing Verified Amended Complaint and that the facts stated therein are true and correct.

Julian Fernau